## CHICAGO GRAIN PRODUCTS CO., Inc., v. MELLON, Secretary of the Treasury, et al.

(Circuit Court of Appeals, Seventh Circuit. November 9, 1926.)

No. 3773.

1. Intoxicating liquors ⬥⟸70.

Tender of hearing, on trial of bill for injunction and bill of review, after denial of permit to operate industrial alcohol plant, *held* sufficient, whether required by National Prohibition Act, tit. 2, § 9 (Comp. St. § 10138½dd), or not.

2. Intoxicating liquors ⬥⟸70—Hearing as in case of cancellation of permit is not required, where permit expires by lapse of time (National Prohibition Act, tit. 2, §§ 6, 9 [Comp. St. §§ 10138½c, 10138½dd], and title 3, §§ 3, 6, 10 [Comp. St. §§ 10138¾b, 10138¾e, 10138¾i]).

Under National Prohibition Act, tit. 2, § 6 (Comp. St. § 10138½c), all permits, whether under title 2 or title 3, are limited; hence, after expiration of permits and refusal of renewal, permittee could not complain that hearing provided for by title 2, § 9 (Comp. St. § 10138½dd), in case of cancellation of permit, was not had in view of title 2, §§ 1 (5), 3, 4 (Comp. St. §§ 10138½, 10138½aa, 10138½b), and title 3, §§ 3, 6, 10 (Comp. St. §§ 10138¾b, 10138¾e, 10138¾i).

3. Intoxicating liquors ⬥⟸70.

Hearing before refusal of permit is not required, under National Prohibition Act, tits. 2, 3 (Comp. St. § 10138½ et seq.).

4. Intoxicating liquors ⬥⟸72.

Circumstances *held* to justify decree dismissing bill for injunction and for review of denial of permit to operate industrial alcohol plant.

5. Intoxicating liquors ⬥⟸70.

Burden is on applicant for permit under National Prohibition Act, tits. 2, 3 (Comp. St. § 10138½ et seq.), to show that he is entitled thereto.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Bills for injunction and for review by the Chicago Grain Products Company, Inc., against Andrew Mellon, Secretary of the Treasury, and others, consolidated for hearing. From a decree dismissing both bills, plaintiff appeals. Affirmed.

Walter E. Beebe, of Chicago, Ill., for appellant.

R. C. Minton, of Indianapolis, Ind., and Edwin A. Olson, of Chicago, Ill., for appellees.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. The government issued to plaintiff in 1921 a permit, under the National Prohibition Act (Comp. St. § 10138¼ et seq.), which authorized it to "operate an industrial alcohol plant" at Rockford, Ill. Another permit, issued the same year, authorized it to "operate a denaturing plant" in Chicago. Each permit contained the following:

"This permit authorizes the operation of the above-described plant or warehouse, the purchase and receipt of alcohol thereat, and the removal therefrom of the manufactured product for any purpose authorized by law or regulations, from the date hereof until surrendered by the holder or canceled by the Commissioner of Internal Revenue for violation of the National Prohibition Act or regulations made pursuant thereto."

Bonded warehouse permits for Rockford and Chicago were also issued to plaintiff. Treasury Decision No. 3773, issued November 14, 1925, said, in part:

"All basic permits issued under titles 2 and 3 of the National Prohibition Act shall expire on December 31, 1925." Pursuant to notice thereof and that permits must be renewed on or before December 31, 1925, plaintiff, on December 18, 1925, applied for new permits, all of which were refused.

[1] By plaintiff's bill for injunction and a bill, called a bill of review, consolidated for hearing, it is contended that the permits should not have been canceled or refused, unless and until there was a hearing, after notice, as provided in section 9, title 2, of the Prohibition Act (Comp. St. § 10138½dd). There was no such hearing. Upon the trial, a hearing was tendered by the government, but the parties, before the Prohibition Administrator for that purpose, got into a controversy and returned to the District Court, where a hearing de novo was had, and the bills dismissed for want of equity.

In support of its contention, plaintiff relies upon Higgins v. Foster (C. C. A.) 12 F.(2d) 646, which holds that section 6, title 2 (Comp. St. § 10138½c), does not control permits for denatured alcohol plants. Section 3, title 2, provides:

"No person shall on or after the date when the Eighteenth Amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented." Comp. St. § 10138½aa.

. The liberal construction, there provided for, is not of title 2 only, but of the whole act. One of the means devised by Congress for the effective administration of the National Prohibition Act, "to the end that the use of intoxicating liquor as a beverage may be prevented," was the permits required by the act. Section 1 of title 2 (Comp. St. § 10138½) is one of definitions, and begins: "When used in title 2 and title 3 of this act (1) the words 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, whisky, rum," etc. Section 1 (5), title 2, defines "permit" for both titles.

Title 2 deals with beverage and nonbeverage liquors and with denatured alcohol. Title 3 deals with denatured alcohol, the manufacture and use of alcohol not denatured, and with distilled spirits fit for beverage purposes, etc. See sections 3 and 4, title 2 (Comp. St. §§ 10138½aa, 10138½b), and sections 3, 6, and 10, title 3 (Comp. St. §§ 10138¾b, 10138¾e, 10138¾i). Title 3 requires permits for many things, but otherwise the whole law as to permits is found in section 6, title 2, only.

If we find that the provisions of section 6, title 2, do not apply to the permits required by title 3, we must also find that Congress provided that certain permits should be strictly limited as to duration, but as to others, not differing in kind, purpose or importance, no limitation at all was provided. The main reason urged upon us to so hold is that the word "liquor" is used in section 6, title 2, whereas title 3 pertains to industrial alcohol, and that Congress intended by such use of the word "liquor" to exclude the "alcohol" of title 3.

The word "liquor" for nonbeverage purposes is used in section 3, title 2. Section 4, title 2, pertains to denatured alcohol and alcohol for nonbeverage purposes, for use in the industrial arts. There the word "liquor" is used twice, and apparently that which is spoken of as "liquor" is, later in the section, spoken of as "alcohol."

The "alcohol" defined by section 1, title 3 (Comp. St. § 10138¾), is the intoxicating element of all liquor, and must be the "alcohol" referred to and included in the term "liquor" and the phrase "intoxicating liquor," as defined in title 2. Diluted with water, alcohol is used as an intoxicating liquor. The term "industrial alcohol" does not import a kind of alcohol, but refers to the use or purpose for which it is permitted to be made. Denatured alcohol is the alcohol of titles 2 and 3 with the denaturant added.

[2] We find nothing in the act which justifies a holding that the provisions of section 6, title 2, do not apply to all permits. The first proviso of the section clearly indicates that all permits are to be limited, and the second proviso of the section is a positive provision that permits for purchases apparently for the purposes of section 4, title 2, and perhaps other purposes, must be limited.

Treasury Decision No. 3773 did nothing more than state the law of the National Prohibition Act, and plaintiff's permits were never valid, in any event, for a longer time than that for which they might have been issued under section 6, and that time had long since expired when Treasury Decision No. 3773 was promulgated. The provisions of section 9, title 2, are limited to inquiries to determine whether a permit shall be canceled for the reasons therein specified.

[3] There is no provision requiring a hearing before refusing a permit. The approach and contact with the department is through the application to be filed. In no case is there a requirement that a permit shall be issued. Ma-King Products Co. v. Blair, 46 S. Ct. 544, 70 L. Ed. — (opinion filed June 1, 1926) points out the large and important discretionary powers and duties of the Commissioner under the act. He has no greater duty than to consider fairly all the relevant facts presented by the application. We see no reason why there should be a formal notice or formal hearing before rejection, unless requested by applicant, showing sufficient reasons therefor. However that may be, the tender of a hearing in open court was sufficient in this case. That a full hearing was not then had, does not appear to have been the fault of defendants. Thereafter a full hearing upon the applications was had by the District Court. Little in the record there made inspires confidence in the plaintiff.

[4] While the distilleries operating before prohibition, to meet the demand for intoxicating beverages and for alcohol for industrial purposes, were likely sufficient to meet the demands for industrial purposes after the Eighteenth Amendment became effective, yet it appears that plaintiff was organized after the Eighteenth Amendment became effective. The record fails to disclose the charter purposes of the plaintiff. When the present officers bought the common stock, they knew that the distillery at Rockford had not been operated from March 1, 1925, to January 1, 1926, because it could not be operated profitably. They knew that plaintiff had not, during that time, been a man-

ufacturer, and that there was enough alcohol for sale on the market at a less price than it could be made at the Rockford plant. Section 1210 of Regulations 60 provides that only manufacturers and wholesale druggists may qualify to sell liquor at wholesale. It is admitted that large quantities of the alcohol purchased for plaintiff's denaturing plant, while the Rockford plant was closed, were sold to the trade as pure alcohol, without being denatured, as either tax-paid or scientifically used alcohol. It is claimed that such alcohol was sold under permit, but we find no permit in the record authorizing any such practice. The only permits in the record, other than those here in question, were for the transfer of alcohol from a distillery at Pekin to plaintiff's denaturing plant in Chicago, except that there was a permit of some sort for receiving alcohol from the Sibley Warehouse & Storage Company at Chicago, which went to the denaturing plant. The District Court found that such sales by plaintiff were illegal.

After plaintiff filed its application for new permits, pursuant to the notice under Treasury Decision No. 3773, that all permits would expire on December 31st, all of the common stock of plaintiff was sold and transferred to a new set of stockholders, none of the old officers were re-elected, but the purchasers of the common stock became and were, at the commencement of this suit, the officers of plaintiff and in full control of its property. The present president of the company was the only officer who testified, and the record fails to show that any officer had had any experience in the operation of a distillery. The president had been, for 15 years, a clothing buyer for various concerns in Chicago, and for 2 years prior to his testimony a sales manager for a photo engraving concern. He knew that the plaintiff had preferred stockholders, but, with a single exception, he did not know who they were or where they lived. He knew practically nothing about the concern's customers, except that he looked them up financially. With one exception, he knew little or nothing about the salesmen of the concern, and testified that they had no means of checking them up. The president paid for his 40 per cent. of the stock partly with money taken out of a deposit box and partly with borrowed money, but from whom borrowed he refused to tell. The evidence also shows that the purchasers of a large per cent. of plaintiff's specially denatured alcohol had had their permits revoked because of the

strong evidence against them that the permits had been violated.

[5] The burden is not upon the government to show that an applicant is not entitled to a permit, but is upon the applicant to show that he is entitled to one. The character and fitness of the men who are to control the business of the permittee is of very large importance.

We are of opinion that the decree of the District Court should be, and it is hereby, affirmed.

ALSCHULER, Circuit Judge, concurs in the result.