CAMPBELL, FEDERAL PROHIBITION ADMINISTRATOR, ET AL. v. W. H. LONG & COMPANY, INCORPORATED.

WYNNE, FEDERAL PROHIBITION ADMINISTRATOR, ET AL. v. SWANSON CHEMICAL CORPORATION.

DORAN, PROHIBITION COMMISSIONER, v. CASPER.

Nos. 445, 510 and 511. Argued April 25, 1930.—Decided May 26, 1930.

*Assistant Attorney General Youngquist,* with whom *Attorney General Mitchell, Messrs. Mahlon D. Kiefer* and *John H. McEvers* were on the brief, for Campbell, Wynne, and Doran.

*Mr. Lewis Landes* submitted for W. H. Long & Company.

*Mr. Harry S. Barger* submitted and *Mr. Michael Serody* was on the brief for Swanson Chemical Corporation.

*Mr. Patrick J. Friel* submitted for Casper.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

These three cases deal with basic permits concerning denatured alcohol. They were argued together with Nos.

.443 and 444, *Campbell* v. *Galeno Chemical Co.*, *ante*, p. 599, decided this day, and involve, in the main, the same questions.

In Nos. 445 and 510, the permits involved authorize the operation of denaturing plants, the purchase and receipt of alcohol thereat, and the removal therefrom of the denatured alcohol. In No. 511, the permit authorizes the use of specially denatured alcohol[1] in the manufacture of toilet preparations.[2] In each of the three cases the permit was issued prior to October 1, 1927, and was in accordance with the regulations in force at the date of issuance.[3] Each permit provides in terms that it shall be in force " from the date hereof until surrendered by the holder or cancelled by the Commissioner of Internal

---

[1] " Completely denatured alcohol is alcohol which has been denatured by a limited number of fixed formulae, for sale to the general public with very little supervision. Specially denatured alcohol is alcohol which is not as completely denatured as the ' completely,' and can only be obtained under a heavy bond for use in manufacturing processes in which the alcohol is always protected by the bond."—Treasury Dept., Internal Revenue Regulations 61, Jan. 31, 1920 (T. D. 2986), Art. 92. " Specially denatured alcohol is ethyl alcohol so treated with denaturants as to permit its use in a greater number of specialized arts and industries than completely denatured alcohol." Regulations 61, revised July 1925, Art. 88.

[2] As in Nos. 443 and 444, two permits are required from the plaintiffs in these cases. One, the basic permit conferring general authority to engage in the business; the other, a supplemental permit, issued from time to time, granting authority for specific withdrawals of alcohol or specially denatured alcohol. Only the basic permits are here involved.

[3] The first regulations promulgated under the Prohibition Act, Regulations 61, January 31, 1920, provided that permits to operate denaturing plants and permits to use specially denatured alcohol in manufacture should " remain in force until voluntarily surrendered or cancelled."—Articles 97 and 115. These provisions were continued in Articles 93 and 111 of Regulations 61, revised July 1925. These Regulations were superseded by Regulations 3, discussed in the text.

Revenue for violation of the national prohibition act [4] or regulations made pursuant thereto."

While the permits of the several plaintiffs were still in force, the Treasury Department, Bureau of Prohibition, promulgated Regulations 3, effective October 1, 1927. Article 95 thereof provides that all basic permits theretofore issued to operate denaturing plants and manufacture denatured alcohol shall expire on December 31, 1928, unless renewed; and that thereafter only annual permits shall be issued. Article 113 makes the same provision for permits to use specially denatured alcohol in the manufacture of toilet and other preparations. The plaintiffs, insisting on the effectiveness of their original permits, filed applications for renewal, which were denied. These suits were then brought to enjoin interference with their permits otherwise than in accordance with the provisions of § 9 of the Act, considered in the *Galeno* case. In No. 445 an injunction was issued by the trial court; the decree was affirmed by the Circuit Court of Appeals for the Second Circuit, 34 F. (2d) 645; and we granted certiorari, 280 U. S. 548. Injunctions were granted by the trial court also in Nos. 510 and 511, 30 F. (2d) 400 [5]; appeals were taken to the Circuit Court of Appeals for the Third Circuit; and these cases are here on certificates from that court.

Among the " articles " enumerated in § 4, Title II, of the National Prohibition Act, (Oct. 28, 1919, c. 85, 41 Stat. 305, 309), which may be manufactured with the use of liquor, under permits, and which are excepted from operation of the act " after having been manufactured and prepared for the market;" are: "(a) Denatured al-

---

[4] The permit in No. 511 reads: " for violation of the provisions of Title III of the national " etc.

[5] The District Court's opinion in No. 510 is not yet reported. The case was heard by the court together with No. 511 and was disposed of on the same grounds as No. 511. [Since reported, 41 F. (2d) 784.]

cohol . . . produced and used as provided by laws and regulations now or hereafter in force. . . . (d) Toilet . . . preparations and solutions that are unfit for use for beverage purposes." Title III, headed " Industrial Alcohol " provides, in § 10: " Upon the filing of application and bond and issuance of permit, denaturing plants may be established . . . and shall be used exclusively for the denaturation of alcohol by the admixture of such denaturing materials as shall render the alcohol, or any compound in which it is authorized to be used, unfit for use as an intoxicating beverage. Alcohol lawfully denatured may, under regulations be sold free of tax either for domestic use or for export." There is no provision in the Act specifically requiring permits for the manufacture of toilet preparations with denatured alcohol.

*First.* The contentions of the Government in Nos. 445 and 510 are those already considered in *Campbell* v. *Galeno Chemical Co., supra.* The questions certified in No. 510 are:

" 1. Is denatured alcohol, during its manufacture and preparation for the market, ' liquor' within the meaning of sections 1 and 6, Title II, of the national prohibition act, the latter of which provides that permits to manufacture ' liquor' may be issued for only one year?

" 2. Does the provision of section 6, Title II, of the national prohibition act, which directs that every permit ' shall designate and limit the . . . time when' the authorized acts may be performed, apply to a permit to operate a denaturing plant, i. e., to use alcohol in the manufacture of denatured alcohol?

" 3. Does a provision in a permit that it shall be in force until ' surrendered by the holder or canceled by the Commissioner of Internal Revenue for violation of the national prohibition act or regulations made pursuant thereto,' comply with the above-mentioned requirement of section 6 of Title II of the national prohibition act, that

every permit 'shall designate and limit the . . . time when' the authorized acts may be performed?

" 4. May a permit to operate a denaturing plant, which permit provides that it shall be in force 'until surrendered by the holder or canceled by the Commissioner of Internal Revenue for violation of the national prohibition act or regulations made pursuant thereto,' be terminated by a general regulation providing that all such permits shall expire on a date named? "

We interpret the first question as inquiring whether a permit to manufacture denatured alcohol is a permit to manufacture liquor within the cited provision of § 6.[6] As thus construed, we answer it in the negative. For, whether issued under § 4, Title II or under § 10, Title III, the permits held by plaintiffs authorize them to convert something which is undoubtedly liquor into a product which is required to be unfit for use as a beverage; that is, to convert liquor into something which is not liquor.[7] *Campbell* v. *Galeno Chemical Co., supra.* For

---

[6] If read literally, the first question is irrelevant to a decision and need not be answered. For, calling the solution " liquor " during its manufacture and preparation for the market—that is, before it is fully denatured and becomes the " article," denatured alcohol—does not aid in determining whether or not a permit to operate a denaturing plant and manufacture denatured alcohol is a permit " to manufacture . . . liquor." The character of the permit is determined, not by the nature of the solution in the process of manufacture, but by the character of the finished article authorized to be produced.

[7] We are not told what denaturants plaintiffs use; but we are asked to take judicial notice that denatured alcohol may be fitted for beverage purposes by extracting the denaturant. We may also take judicial notice that some denaturants cannot be successfully extracted; and that any denaturant must be " such that it can not be removed from the mixture and the treated product made fit for beverage purposes without great difficulty." See " Industrial Alcohol," a monograph issued by the Treasury Dept., Bureau of Prohibition, p. 4 (Gov't Ptg. Office, 1930). Moreover, from the standpoint of caution, denatured alcohol, however treated, is not fit for beverage purposes.

the reasons stated in that case, our answer to the third question is in the affirmative; and to the fourth question in the negative. In view of the answer to the third question, the second question need not be answered.

*Second.* In No. 511, the Circuit Court of Appeals certified the following questions:

" 1. Does the provision of section 6, Title II, of the national prohibition act, which directs that every permit ' shall designate and limit the . . . time when ' the authorized acts may be performed, apply to a permit to use specially denatured alcohol?

" 2. (Same as question 3 in No. 510).[8]

" 3. May a permit to use specially denatured alcohol in the manufacture of toilet preparations, which permit provides that it shall ' be in effect until surrendered by the holder or cancelled by the Commissioner of Internal Revenue for violation of the provisions of Title III of the national prohibition act or the regulations made pursuant thereto,' be terminated by a general regulation providing that all such permits shall expire on a date named? "

In this Court, the Government concedes that the permit here involved is not one to manufacture liquor within the meaning of either the special or the general time provisions of § 6. It contends, however, that since toilet preparations and denatured alcohol used in their manufacture are both excluded by § 4 from the operation of the Act, the plaintiff's business is not one for which a permit is required by the statute; that if the plaintiff used so-called completely denatured alcohol, no permit would be required at all, Regulations 61 (1920), Art. 108; Regulations 3 (1927), Art. 106; that permits for the use of specially denatured alcohol are required only by the regulations of the Bureau pursuant to its general authority, conferred, among other sections, by § 13, Title III, to

[8] Except for the slight variation in the language of the permit mentioned in note 1, *supra,* and quoted in the third question.

make regulations to guard against the diversion of alcohol for unlawful purposes and to protect the public revenue; that the power to issue regulations includes the power to repeal and amend them; that § 9, Title II, applies only to the permits required by statute and does not abridge the regulatory power with respect to permits required only by administrative regulation. The conclusion is, in our opinion, unsound.

Since no question has been raised as to the propriety of plaintiff's permit, we do not inquire whether the permit is required by the Act or whether its requirement by regulations is authorized thereby. But, if the requirement of the permit is proper, it is so only because it is authorized by the Act, either explicitly or otherwise. There is no suggestion that the regulations were made under any other authority. If, then, the permit was issued under authority of the Prohibition Act, the plaintiff comes within the description in § 9 of "any person who has a permit"; and that section provides the exclusive procedure for the revocation of the permit. The attempt to revoke it by regulations without complying with that section exceeds the authority, and violates rights, conferred by the Act.[9]

---

[9] The Government urges that under Act of October 3, 1913, c. 16, Section IV, N, subsec. 2, 38 Stat. 114, 199 and Act of June 7, 1906, c. 3047, 34 Stat. 217 (U. S. C., Tit. 26, §§ 481–487), the requirement of permits for the manufacture and denaturation of alcohol tax free, in special cases, was governed entirely by regulations; that permits under the regulations made pursuant to those Acts were limited to specific amounts of alcohol (Regulations 30, Art. 60, 61, 77–90); that §§ 10 and 11, Title III of the Act treat of similar subjects; and that the Prohibition Act, as shown by the report of the House Judiciary Committee (H. R. Report No. 91, 66th Cong., 1st sess., p. 2) purports to continue the policy of the prior Acts and regulations. There is a decisive difference between the Prohibition Act and those statutes. The latter are silent on the whole subject of permits; the former specifically provides how permits should be revoked. Moreover, the plaintiffs in Nos. 443 and 444,

We answer the third question in the negative. For reasons stated in connection with questions 2 and 3 in No. 510, we answer the second question in the affirmative; and do not answer the first.

> *No. 445—Affirmed.*
> *No. 510—Question 1 answered No.*
> *Question 2 not answered.*
> *Question 3 answered Yes.*
> *Question 4 answered No.*
> *No. 511—Question 1 not answered.*
> *Question 2 answered Yes.*
> *Question 3 answered No.*

relying on the same and even more specific portions of the House Committee report referring to the Lever Act, August 10, 1918, c. 53, §§ 15 and 16, 40 Stat. 276, 282, the Revenue Act of 1918, February 24, 1919, c. 18, 40 Stat. 1057, 1105–16, and Internal Revenue T. D. 2788, make quite as cogent an argument for a contrary conclusion. We need not consider the merits of either argument. For, we are of opinion that § 9 is applicable to the permits involved in all these cases. There is no need to seek light from debatable inferences from a general statement in the Committee report.

The Government also points out that, aside from the decisions in Nos. 443, 444, 445 and 510, its contentions in No. 511 are of great importance to the administrative officers in promulgating regulations governing the use of specially denatured alcohol. Our decision merely denies the power to revoke unexpired permits in a way other than that prescribed in the Act. As in Nos. 443 and 445, we refrain from deciding whether or not the Regulations are effective as to future applicants for permits.