**BENDER v. CAMPBELL, Federal Prohibition Administrator, et al.**

**No. E–5000.**

District Court, E. D. New York.

June 30, 1930.

J. Edward Lumbard, Jr., of New York City (J. Edward Lumbard, Jr., and Seymour B. Quel, both of New York City, of counsel), for complainant.

Howard W. Ameli, U. S. Atty., of Brooklyn, N. Y. (Herbert H. Kellogg and Geo. H. Bragdon, Asst. U. S. Attys., both of Brooklyn, N. Y., of counsel), for defendants.

BYERS, District Judge.

This is an action in equity in which a permanent injunction is sought to enjoin the defendants from:

(a) Terminating, under article 113 of Regulations 3 of the Bureau of Prohibition, permits issued to continue in operation until surrendered, etc.

(b) Terminating, specifically, plaintiff's permit No. 20680.

(c) Refusing to sign withdrawal permits under the said basic permit.

As an incident to the action, a temporary injunction is sought.

The precise question seems to be whether the effect of the decisions of the Supreme Court in the Long, Swanson Chemical and Casper Cases, 281 U. S. 610, 50 S. Ct. 415, 418, 74 L. Ed. 1070, of May 26, 1930, is such that a preliminary injunction should be issued.

In this case, the permittee, as the result of a decision in this court, obtained basic per-

mit No. 20680 to use specially denatured alcohol in the manufacture of "Sterole," such permit to continue in operation until surrendered. It was dated January 7, 1927, and referred to premises 60 Greenpoint Avenue, Brooklyn, N. Y. On December 27, 1927, it was indorsed as follows:

"Permission is hereby granted for amendment of your permit to show change of address from 60 Greenpoint Ave., Brooklyn, N. Y., to 37–11, 22nd St., Long Island City, N. Y. New bond filed.

"R. T. J.
"Maurice Campbell,
Federal Prohibition Administrator"

Meanwhile, Regulations 3, effective October 1, 1927, were issued.

In reliance thereon, the permittee applied for a permit for 1929, which was granted, and he manufactured and sold his product thereunder.

He applied in August, 1929, for a similar permit for 1930, and was refused, not because he had renatured or diverted alcohol, but because "he did in bad faith on the manufacturing premises convert the product known as 'Sterole' into various disinfectant products by the addition of Coal Tar, Pine Tar, Kerosene and other chemical ingredients, thus converting the said product 'Sterole' into products other than those authorized to be manufactured (what law he violated thereby is not stated); and, further, during the year 1929, he did unlawfully use denatured alcohol Formula 38–B (the permitted formula under the 1929 Permit) in the manufacture of products known as Disinfectant, Liquid Floor Soap and Animal and Plant Sprays, which products are not authorized by regulations of the Treasury Department to be manufactured with Formula 38–B denatured alcohol." Thus the answering affidavit of the Administrator.

It is elsewhere stated in the same affidavit that the application for the 1929 permit in December, 1928, and the acceptance thereof, were in lieu of the permit first issued, and that the expiration of the 1929 permit deprives the plaintiff of any right to withdraw specially denatured alcohol. If that position is sound, of course the temporary injunction cannot issue. If it is unsound, perhaps the matter cannot be so easily disposed of.

The plaintiff's business appears to be entirely legitimate, and, if this were not so, charges of diversion and renaturing would be made by the Administrator.

[1] The Supreme Court, in Long, Swanson Chemical, and Casper Cases, supra, of the October, 1929, term, decided May 26, 1930, speaking through Mr. Justice Brandeis, says with reference to Casper Case (the permit authorizing the use of specially denatured alcohol in the manufacture of toilet preparations having been issued prior to October 1, 1927, and in the form here being examined):

" * * * If, then, the permit was issued under authority of the Prohibition Act, the plaintiff comes within the description in title 2, § 9 (27 USCA § 21), of 'any person who has a permit'; and that section provides the exclusive procedure for the revocation of the permit. The attempt to revoke it by regulations without complying with that section exceeds the authority, and violates rights, conferred by the Act."

This is plain and unmistakable language.

The government urges, however, that the plaintiff has lost his right to seek to take advantage of this decision for two reasons:

(1) The amendment to his permit above quoted, having been obtained in December 1927, was in effect a new permit, issued after October 1, 1927, and hence limited in time to December 31, 1928.

But, if the regulation was contrary to the law as pointed out in the language quoted, the argument fails. Also the facts are quite different from those in American Denaturing Corporation v. Campbell (C. C. A.) 34 F.(2d) 648. Moreover, the Administrator did not regard this as a new permit dating from December 27, 1927, for he exacted no new bond, in spite of the language of the indorsement quoted. The plaintiff swears, in a replying affidavit, that he has never filed any bond other than the one originally given in connection with his basic permit issued pursuant to a decision of this court.

(2) That a compliance with the Regulations 3, § 113, in deference to notice from the Administrator that it would be necessary so to do, and the use of a form which recited expiration of the permit on December 31, 1928, constituted an abandonment or surrender of the original basic permit.

To justify such a position, some affirmative act on the part of the permittee should be shown which would be consistent with that intention. Having in mind only the facts now under examination, and with deference to opposing views, it is believed that mere acquiescence in a governmental regulation, having the force of law until set aside by the court of

last resort, is not such a voluntary relinquishment of a known right as to constitute surrender or abandonment of the only franchise which enabled the plaintiff to conduct his lawful business. It may be that he was financially unable to assume the burden of proving to the Supreme Court that the Second Circuit Court of Appeals was right in Higgins v. Foster, 12 F.(2d) 646, and the Third Circuit Court of Appeals was wrong in Chicago Grain Products Co. v. Mellon, 14 F.(2d) 362.

There is no element suggested by the government's brief to bring this case within the facts under review in Greenberg v. Doran (D. C.) 42 F.(2d) 507, decided by Judge Campbell on June 23, 1930, and hence within the rule of decision in that case.

This plaintiff presumably had his living to make, in a calling sanctioned by law, but circumscribed by a network of regulations, and regulatory activity, which, to say the least, were not always in harmony one with another, and he did what nearly any sensible man would do, that is, he tried to comply with each administrative development as it was promulgated. He neither indorsed his basic permit "surrendered," as in Holman v. Campbell (D. C.) 39 F.(2d) 193, nor did he accept any "certain agreed conditions" as did Greenberg. He simply did what the public authorities told him to do. To construe such conduct as a waiver would amount to notifying all citizens engaged in this lawful calling that one can adhere to governmental regulations only at his peril. To borrow a phrase coined in another connection (New York Life Ins. & Trust Co. v. Winthrop, 237 N. Y. 93, 142 N. E. 431, 434, 31 A. L. R. 791): "A rule obeyed with reluctance under the compulsion of authority is not to be stretched by implication."

Hence, it is considered that this plaintiff has not voluntarily relinquished or surrendered his 1927 basic permit, because he was not advised authoritatively until May 26, 1930, that it could not be revoked except as the statute provided.

If he has failed in the good faith observance of the requirements of that permit, the Administrator can proceed under the law to revoke it, because the regulatory revocation attempted under date of October 1, 1927, has been declared ineffectual.

The question of issuing a temporary injunction to prevent the exercise of the withdrawal privilege presents this perplexity: If it is refused, the plaintiff is kept out of his lawful business until at least the month of October, 1930, because there will be no equity term of this court until then. If it be issued, and the Administrator has good cause to revoke the basic permit in the fair and proper performance of his duties, he can proceed promptly to that end.

In the exercise of a fair discretion, the latter course seems most nearly to meet the requirements of this particular situation, and a temporary injunction will issue to be settled on three days' notice and to embody appropriate terms as to the withdrawal privilege in accordance herewith.