**M. H. McCARTHY & CO., Inc., v. DORAN, Prohibition Com'r et al.**

No. 3202.

District Court, D. Massachusetts.

Sept. 2, 1930.

See, also, 40 F.(2d) 963.

Abbott & Carroll, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and Elihu D. Stone, Asst. U. S. Atty., both of Boston, Mass., for defendant.

MORTON, District Judge.

Three permits are involved, viz., one to use specially denatured alcohol in large amounts, a B permit to sell intoxicating liquor to persons holding permits to buy it, and an H permit authorizing the plaintiff to use alcohol and wine in manufacturing medicinal and other preparations. All were revoked, and the question is whether the evidence justified the revocations.

The plaintiff is the owner of a business which began more than fifty years ago as a liquor store. With the advent of prohibition it was changed into a grocery business, which also used and sold liquors under the B and H permits above referred to. It also undertook the manufacture of a line of toilet preparations, hair tonics, etc., in which lightly denatured alcohol is used. For this purpose it applied for and obtained the other permit. Whether this last permit was necessary was expressly left undecided in Campbell v. W. H. Long & Co., Inc., 281 U. S. 610, 50 S. Ct. 415, 74 L. Ed. 1070, May 26, 1930; and Campbell v. Galeno Chemical Co., 281 U. S. 599, 50 S. Ct. 412, 74 L. Ed. 1063, May 26, 1930. The plaintiff contends that the revocation of the permits was unwarranted by the evidence, and that the hearing was essentially unfair.

As to the denatured alcohol permit: It seems probable that all, or nearly all, of the plaintiff's product manufactured and sold under this permit was ultimately used for illegal redistillation. The decisive question therefore is whether the plaintiff was aware of the purpose for which its goods were being purchased, and knowingly sold them for that ultimate use. There was no direct evidence bringing home such knowledge to the plaintiff's managers. It could be inferred, if at all, only from the unusual way in which the plaintiff's business was conducted.

According to the testimony of Mr. Noonan, the manufacture and sale of toilet preparations like those in question is, as ordinarily carried on, a highly competitive business conducted through active solicitation by salesmen; the average retail sale is of small amount, and sales at wholesale run from five to fifty gallons. If this testimony was not correct, it could easily have been contradicted; but no such evidence was offered. The plaintiff's business affords a striking contrast; it had for the goods in question not more than eight or ten customers; the plaintiff's managers had no personal acquaintance or contact with more than two or three of them at most; no salesmen were employed to solicit orders, and no advertising was done; the orders came in by mail and were paid for in full before the goods were shipped; instead of being under fifty gallons as the maximum, the orders which the plaintiff received were rarely for as little as one hundred gallons, and ran from that to more than seven hundred gallons; large orders were frequently repeated from the same customer at short intervals; for instance, in January and February, 1929, the Dee Drug Company bought 3,190 dozen pint bottles of rubbing alcohol—nearly 5,000 gallons—and in June, 1929, the Aqua Vita Drug Company bought 1,000 gallons of various toilet waters on orders running from 100 to 300 gallons.

The plaintiff is by no means chargeable with the detailed knowledge about its customers which was secured by the government investigations, nor with knowledge of specific instances in which its products appear to have been illegally used, which were not brought to the plaintiff's attention. A large amount of inadmissible and prejudicial evidence was introduced on these points. I have disregarded it. The facts as above stated were properly proved, and are substantially those on which the question of the plaintiff's knowledge is to be determined.

The comparison between the plaintiff's business and that of Noonan ought not to be pushed too far. The plaintiff's aim may have been to put out in bulk to wholesalers and jobbers a cheap product at the lowest possible price. Under such a plan, advertising expense would be cut as low as possible, and no attempt would be made to establish contact with the ultimate consumers. It would, however, be rather essential that such a business should keep in close touch with its buyers to know how its goods were being received by users. I do not for a moment believe that the large orders for the plaintiff's product, offered without solicitation and frequently repeated, could have failed to arouse interest and curiosity in its managers. The natural course would have been for them to follow up such good customers and see if their business could not be further extended

with advantage to both parties. Mr. McCarthy's failure to take any steps of that character is highly significant. It is hard to explain except upon the supposition that he realized the purpose for which the goods were being bought and thought it best for him to know as little as possible about what became of them after they left his control. He apparently has no knowledge of any use of these goods in the retail trade. He testified, in effect, that it was none of his business what was done with the plaintiff's products after he sold them. The evidence does not justify a finding that he actually knew that any particular lot which the plaintiff sold was to be used for illegal purposes; but the evidence does show, I think, that he had reasonable cause to believe that the plaintiff's products in question were bought for illegal use, that he suspected that purpose when the goods were sold, and that he intentionally refrained from investigation or inquiry into what ultimately became of the goods which he sold; and I so find. On those facts I find and rule that such sales were not made in good faith under the permit. On this ground I am of the opinion that the revocation of it was justified.

As to the other charges: As what has been decided has been sufficient to dispose of the case, it is unnecessary to discuss the other charges. I may add, however, that those based on alleged improper records seem to me quite without merit; and that the charges that the plaintiff's formulæ were intentionally altered from those submitted to and approved by the government, for the purpose of making redistillation easier and more successful, seem to me not sustained. As to these last charges, it is clear from the evidence that a wide latitude was permitted by the government as to the essential oils which might be used; that it was to some extent at least a matter of opinion whether an oil was suitable for the purpose and opinions of competent persons might differ on the point. It is said, for instance, that the same oil was approved by government officials on one occasion, and disapproved on another. There is no doubt that the plaintiff was trying to manufacture its preparations as cheaply as possible. The burden of proof upon the government, viz., to show that the changes from the formulæ were made in bad faith for the illegal purpose stated. I do not think that the evidence warranted such finding.

■■ As to the B and H permits, the hearing officer made no finding of any violation of either of these permits. Each of his seven findings of fact on which all permits were revoked refers explicitly to "denatured alcohol" and refers to abuse of some privilege or regulation concerning it. The business authorized by these two permits was essentially different from that authorized by the other permit. It does not appear that they were in any way interrelated. Specially denatured alcohol is unpotable; it is not alcoholic liquor within the statute. See Campbell v. Long & Co., supra. The plaintiff's violations of its denatured alcohol permit did not involve offenses against the National Prohibition Act (27 USCA) or the laws of this state. There is no finding that the plaintiff or its managers were guilty of conspiracy to violate the act. On these facts the revocation of the B and H permits, neither of which had been violated, was entirely unwarranted.

Decree accordingly.