**GOLDMAN v. CAMPBELL, Federal Prohibition Administrator, et al.**

No. 180.

Circuit Court of Appeals, Second Circuit.

Dec. 15, 1930.

Lewis Landes, of New York City, for appellant.

Howard W. Ameli, U. S. Atty., George H. Bragdon and Herbert H. Kellogg, Asst. U. S. Attys., all of Brooklyn, N. Y. (John E. O'Neill, Senior Atty., Bureau of Industrial Alcohol, of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

This suit is to enjoin the appellees from denying to the appellant the use of specially denatured alcohol under a permit issued in July, 1923, or, in the alternative, to review and reverse the action of the appellees in refusing to issue to the appellant a permit for the year 1930. The permit of July, 1923, was used until March, 1926, when the Prohibition Commissioner issued, without consultation with the appellant, a permit terminating December 31, 1926. The Commissioner wrote to the appellant that, in accordance with a Treasury decision, the permit thus granted would continue in operation until surrendered or revoked under article 119, Regulations 61, and stated that it would not be necessary to renew this specially denatured alcohol permit for the year 1927, and advised attaching the letter written him, and making it a part of the permit in appellant's files. On August 31, 1928, the appellant filed his application, and on December 31, 1928, he was granted a renewal permit to conduct his business and to permit him to withdraw specially denatured alcohol. When, on Decem-

ber 31, 1929, the appellant applied for a further renewal, he was advised that his application had been disapproved, and was denied the right to withdraw alcohol in connection with his business.

There is no evidence that the application for the permits of 1926, 1928, and 1929 were filed or made under duress or without prejudice to the appellant's right under the original permit of 1923. There was no surrender of the 1923 permit by coercion, nor was appellant directed against his will to file an application for 1928 or 1929. It is not claimed that making these later applications was a surrender of the 1923 permit, but the contention is that, by the acceptance and operation under them, without reservations for the several years, the appellant cannot now claim that he protested or in fact was coerced to make his application and never surrendered his original rights. On the contrary, it is established by the record that appellant's various applications for permits were filed freely and used thereafter without protest until his December 31, 1929, renewal application for the 1930 permit was disapproved.

The August 31, 1928, application contained upon its face nothing to indicate that it was filed under protest or with a reservation of rights under either the 1923 or the 1926 permit. But it did contain the provision that "this application is submitted with the understanding that the permit applied for must be renewed annually." The December 31, 1928, permit was different in terms and conditions from either the 1923 or 1926 permit; it was supported by a new bond in the amount of $3,000, and authorized the use of 1,100 gallons per month of formula 40 denatured alcohol; the use of formula 39(b) had been previously authorized. It contained a provision that it would expire December 31, 1929. Appellant operated under this authority in the year 1929, making no claim for operation under either the 1923 or 1926 permits. He at no time, by institution of suit or otherwise, insisted upon the recognition of his 1923 permit. Higgins v. Foster, 12 F. (2d) 646 (C. C. A. 2).

The later permit restricted alcohol withdrawals to a particular kind and to a specific quantity. The application for the 1930 permit was for the same withdrawals as the 1929 permit, to wit, 1,100 gallons of formula 40 denatured alcohol per month; but he applied for no formula 39(b) alcohol as had been authorized in 1923 and 1926 permits. He asked for permission to manufacture only one product—violet toilet water. The right to use denatured alcohol was ended at the expiration or the duration of each permit, and this included the 1923 permit.

The application for the 1930 permit was disapproved, for the reason that the appellant had manufactured during 1929 substandard and redistillable violet toilet water, and he had diverted, during that year, denatured alcohol allotted to him, and had made false records purporting to show that it had been manufactured into a product and that this product had been sold to the Mohank Sales Company. Although appellant was advised that he might have a hearing after this denial, none was requested. In the absence of such a request, there is no provision requiring a hearing before refusing a permit. Ma-King Products Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046; Fox v. Blair, 20 F.(2d) 235 (D. C. E. D. Pa.); Halpern v. Andrews, 21 F.(2d) 969 (D. C. 3); Chicago Grain Products Co. v. Mellon, 14 F. (2d) 362 (C. C. A. 7).

The administrator's investigation of the conduct of the appellant's business in 1929 revealed, by the analysis of the government chemist, that the appellant's product—violet toilet water—contained 71.30 per cent. alcohol by volume, and examination showed this product to be a substandard toilet preparation which yields potable alcohol upon simple manipulation and distillation. Moreover, it was shown that the appellant sold in bulk practically its entire product to the Mohank Sales Company, except one shipment of 665 gallons, which was made to another concern. There was a discrepancy in ingredients shown. There were total sales of 14,770 gallons for the year to the Mohank Sales Company, which government agents reported was in bad standing in the Prohibition Department. The Mohank Sales Company received, from the New York district from permit holders a total of 153,200 gallons of alcoholic toilet products. Seventy-five per cent. of the merchandise alleged to have been received by this company from permit holders never reached the company's place of business, but went to its customers, and 25 per cent. was not bottled, but was placed in drums and shipped out in bulk. The Mohank Sales Company refused to make known to the Treasury Department the names of its customers or the channels of its trade. The appellees concluded that it was a "cover house" and established for the sole purpose of assisting permit holders who were engaged in diversion of denatured alcohol. Under these circumstances, the appellees were justified in

the suspicion that the permittee was simply selling to itself and using the Mohank Sales Company as a method of diversion for illegal purposes. Driscoll v. Campbell, 33 F.(2d) 281 (C. C. A. 2); Solax Drug Co. v. Doran, 27 F.(2d) 522 (C. C. A. 3). The testimony justified the refusal to grant the 1930 permit.

It is argued that section 4, title 2, of the National Prohibition Act (chapter 85, Act Oct. 28, 1919, 41 Stat. 305, 309 [27 USCA § 13]), specifically exempts finished toilet preparations from its provisions, and that therefore there is no need for a permit to withdraw specially denatured alcohol. Campbell v. Long & Co., 281 U. S. 610, 50 S. Ct. 415, 74 L. Ed. 1070, and Campbell v. Galeno Chemical Co., 281 U. S. 599, 50 S. Ct. 412, 74 L. Ed. 1063, are cited, but do not support this claim. Specially denatured alcohol is not controlled by the provisions of title 2. It does, however, come under section 13, title 3 (27 USCA § 83). Driscoll v. Campbell, 33 F.(2d) 281 (C. C. A. 2); Elsinore Perfume Co. v. Campbell, 31 F.(2d) 235 (C. C. A. 2).

Decree affirmed.