## ALLIED DRUG & CHEMICAL CORPORATION v. HELVERING, Com'r of Internal Revenue, et al.

District Court, S. D. New York.
Jan. 3, 1935.

Barron, Rice & Rockmore, of New York City (David A. Malis, of Philadelphia, Pa., Michael Sarody, of Philadelphia, Pa., and Bernard S. Barron, of New York City, of counsel), for plaintiff.

Martin Conboy, U. S. Atty., of New York City (Earle N. Bishopp, Asst. U. S. Atty., of Middletown, N. Y., of counsel), for defendant Flynn.

HULBERT, District Judge.

Plaintiff filed a bill in equity praying that the rights of the parties be adjudicated and that a preliminary injunction be issued, to be made permanent upon final hearing, restraining defendants from interfering with its business under a permit issued December 29, 1932, and intermittently extended to February 28, 1934, and expiring December 31, 1934, for the use of specially denatured alcohol.

The plaintiff herein has for many years been engaged in the business of manufacturing and selling various products approved by the Treasury Department requiring the use of specially denatured alcohol and has held permits by direction of the Commissioner of Internal Revenue.

In connection with the permit existing at the time of the commencement of this action, plaintiff procured a bond in the sum of $60,000 from a surety company which on March 29, 1934, was taken over by the New York State Superintendent of Insurance in Rehabilitation. Plaintiff's permit was suspended by the Supervisor, who thereafter

and on June 20, 1934, requested plaintiff to file a superseding bond. This request was repeated on July 18, 1934.

In August, 1934, plaintiff filed an application for renewal of its basic permit for 1935, and on November 20, 1934, filed the superseding bond, executed by the New Amsterdam Casualty Company, to be effective as of March 29, 1934.

No action having been taken by defendant Flynn to approve said bond, plaintiff on December 20, 1934, instituted this action and procured an order requiring the defendant Flynn to show cause why a mandatory injunction should not issue to him to approve said bond, and also against all of the defendants to execute and deliver to plaintiff necessary withdrawals of specially denatured alcohol in accordance with said basic permit.

Upon the return of said order to show cause the court suggested that the bond be approved and that plaintiff be given a hearing, and meanwhile the motion was adjourned to December 28.

At that time it was stated that the bond had been approved but nothing had been done regarding the suggested hearing.

The defendant Flynn submitted an affidavit in which he stated that since December 15, 1934, he has carefully considered the aforesaid applications of the Allied Drug & Chemical Corporation (Form 1477 for withdrawal permits, and also application Form 1479 for a basic permit for 1935), and *in the exercise of the administrative discretion vested in him by law* and the regulations of the Treasury Department, he has disapproved the same on the ground that the said Allied Drug & Chemical Corporation is not entitled to the further confidence of the department for the following reasons, to wit:

"1. That on or about February 10, 1930, you, Alfred Van Horn, your president, and Frank E. DeBorde, your then secretary, were indicted in the U. S. District Court for the Northern District of Illinois upon charges of engaging in a conspiracy to divert specially denatured alcohol in violation of the National Prohibition Act, to which indictment Alfred Van Horn and Frank E. DeBorde, filed pleas of 'nolo contendere' and were fined $2000 and $1000 respectively.

"2. That you have failed to settle liabilities which have accrued in favor of the United States on account of transactions under prior permits.

"3. That during the period from January 1, 1928 to May 10, 1934 you had business dealings and associations with persons and concerns whose conduct has been such as to invite proceedings against them for violation of the National Prohibition Act.

"4. That during the period from on or about November 17, 1932 to on or about February 27, 1934 you did unlawfully sell and dispose of bay rum, toilet waters, perfumes, and similar preparations to alleged customers other than barber shops, beauty parlors, beauty and barber supply dealers, general retail stores, wholesale and retail drug stores and ultimate consumers.

"5. That during the year 1934 you did wilfully fail to manufacture your rubbing alcohol compound in conformity with the requirements of the Department."

Also on the adjourned day of said motion plaintiff asked leave to file a "supplemental" bill of complaint to amend his alleged cause of action and praying for a mandatory injunction renewing said basic permit for the year 1935 and directing withdrawals for January, February, and March of that year "in accordance with the applications forms 1477 which are now on file" with the defendant Flynn.

The United States attorney consented to the filing of said pleading as an "amended complaint," but stated that he did not appear for either of the defendants Helvering and Mellott, who had not been served in this action, and objected on behalf of the defendant Flynn that by the filing of said amended pleading the motion should be deemed abandoned.

The United States attorney also objected that the bill is defective in that it seeks a writ of mandamus to compel the defendants to perform their duties under the law as interpreted by the court and that injunction and mandamus cannot be obtained in the same proceeding. Burgess v. Wilbur, 60 App. D. C. 212, 50 F.(2d) 502. Reserving consideration, however, of these technical objections, and passing to a consideration of the merits of the case, the question which is presented is:

Since the repeal of the Eighteenth Amendment, do the permit authorities have any discretionary power to grant or refuse permits authorizing the use of *specially* denatured alcohol in the manufacture of toilet preparations and compounds?

The National Prohibition Act (27 US CA) dealt with traffic in liquor from two viewpoints: (1) The traffic in beverage

liquors (sacramental and medicinal excepted) was prohibited absolutely and unconditionally; (2) the traffic in non-beverage liquors was permitted but carefully regulated to prevent it from getting into prohibited channels.

The National Prohibition Act contained three titles and provided that titles 1 and 3 and sections 1, 27, 37, and 38 of title 2 should take effect and be in force from and after the passage and approval of the act (October 28, 1919), the other sections of title 2 to take effect and be in force from and after the date when the Eighteenth Amendment of the Constitution of the United States should go into effect (January 16, 1920). Section 21, tit. 3.

It was said in United States v. Chambers, 291 U. S. 217, at page 222, 54 S. Ct. 434, 435, 78 L. Ed. 763, 89 A. L. R. 1510: "Upon the ratification of the Twenty-First Amendment, the Eighteenth Amendment at once became inoperative. Neither the Congress nor the courts could give it continued vitality. The National Prohibition Act, to the extent that its provisions rested upon the grant of authority to the Congress by the Eighteenth Amendment, immediately fell with the withdrawal by the people of the essential constitutional support."

It is contended, therefore, by the plaintiff, that: (a) There is no authority for and no permit is required; (b) the whole discretionary power came into existence by virtue of sections 4, 5, 6, and 9 of title 2 (27 USCA §§ 13, 14, 16, 21), which were dependent for their effectiveness on the Eighteenth Amendment and fell with its repeal; (c) that sections 1, 27, 37, and 38 of title 2 (27 USCA §§ 4, 44, 57–61) have nothing to do with the issuance of permits; (d) that title 3 of the National Prohibition Act (section 1 et seq. [27 USCA §§ 63, 71 et seq.]) does not confer any discretionary power to grant or refuse permits for the use of denatured alcohol for manufacturing purposes; and (e) that title 3 discloses no requirement for the procuring of permits to use specially denatured alcohol for manufacturing purposes.

The apparent necessity for this action under plaintiff's contention (a) is that the defendant Flynn prevents the plaintiff from securing alcohol without withdrawal permits, which the defendant has no right to require, but that, in the event that such permits are required, the defendants have been deprived of all discretionary power by the repeal of title 2 and that plaintiff is entitled to the permit as a matter of course. If the defendants were assuming to act under the provisions of title 2, there would be merit in the plaintiff's contention. If, on the other hand, the defendants are not acting under title 2, all of the cases cited by the plaintiff as applicable, involving the construction of title 2, are inapplicable to the issue involved herein.

The original permit in this case dated December 29, 1932, bears upon its face: "Permit to use specially denatured alcohol under Title III of the National Prohibition Act." This permit has been successively extended and expired on December 31, 1934.

Did the defendants have the authority to issue said permit under the provisions of title 3?

Plaintiff relies upon Campbell v. W. H. Long & Co., 281 U. S. 610, 50 S. Ct. 415, 74 L. Ed. 1070. In that case the Supreme Court seems to have denied the power to revoke unexpired permits in a way other than that prescribed in the act, but refrained from deciding whether or not the regulations were effective as to future applicants for permits. Moreover, that case was decided when all of the provisions of the National Prohibition Act were in effect.

Here we are concerned, not with the revocation of a permit, but the issuance of withdrawal certificates based upon the existence of a basic permit; and when it appeared that this issue would become academic by the expiration of the permit before the likelihood of a decision, the plaintiff sought to amend its cause of action by basing it upon the refusal of the defendants to issue a renewal permit for 1935, which, of course, was not incorporated in the original motion for a mandatory injunction.

Section 11 of title 3 (27 USCA § 81) provides in part: "but any person permitted to obtain alcohol tax free, except the United States * * * shall first apply for and secure a permit to purchase the same and give the bonds prescribed under Title II of this Act [chapter 2 of this title]."

It is at least arguable that the foregoing provision incorporated into title 3 so much of title 2, § 6 (27 USCA § 16), as established a procedure for giving bonds.

Provision for the withdrawal of alcohol from bond without the payment of Internal Revenue tax for denaturation and subsequent industrial use was enacted long prior to the adoption of the Eighteenth Amendment. (This was the Act of June 7, 1906, 34 Stat. 217, amended and extended by the

Act of March 2, 1907, 34 Stat. 1250, and subsection 2, paragraph N of section 4 of the Act of October 3, 1913 [26 USCA §§ 487, 488].) It is true that these *statutes* "are silent on the whole subject of permits," but departmental administration, like the courts', proceeds step by step.

Section 1 of the Act of June 7, 1906 (26 USCA § 481), provides for the withdrawal "provided said alcohol shall have been mixed in the presence and under the direction of an authorized Government officer * * * with methyl alcohol or other denaturing material * * * which destroys its character as a beverage and renders it unfit for liquid medicinal purposes." So that this statute recognized, before the enactment of the National Prohibition Act, the necessity of government regulation to prevent the diversion of the alcohol for improper purposes.

The section further provided: "* * * the conditions upon which said alcohol may be withdrawn free of tax shall be prescribed by the Commissioner of Internal Revenue, who shall, with the approval of the Secretary of the Treasury, *make all necessary regulations* for carrying into effect the provisions of this Act." (Italics mine.)

Treasury Department Regulations No. 30, revised and effective October 12, 1917, provided, among other things, for a permit system to control the sale and use of specially denatured alcohol.

Every manufacturer, before procuring specially denatured alcohol or recovering completely denatured alcohol for re-use, was required to file with the Commissioner of Internal Revenue a notice of application for permit and bond, and Article 79 of the Regulations provided: "upon receipt of the prescribed notice and bond the collector will, if the same are satisfactory *and the applicant is found to be entitled to the confidence of the department,* indorse his approval thereon * * * and the collector will issue to the applicant a withdrawal permit."

Regulations No. 30 controlled until January 31, 1920, when Regulations No. 61 were promulgated pursuant to title 3 of the National Prohibition Act and prior laws on the subject not inconsistent therewith, providing for the sale and use of specially denatured alcohol under permit.

Regulations 3 superseding No. 61 became effective April 1, 1931; and upon the abolition of the Bureau of Industrial Alcohol were continued in force and effect pursuant to Treasury Decision 4432 approved May 10, 1934, paragraph 4 of which reads as follows: "Except as may hereafter be otherwise provided, all regulations prescribed, all orders and instructions issued, and all forms adopted for the enforcement of the laws heretofore administered by the Commissioner of Industrial Alcohol or the Bureau of Industrial Alcohol, and assistants, inspectors, and agents thereunder, and remaining in effect after the repeal of the Eighteenth Amendment, will continue in effect as regulations, orders, instructions, and forms of the Bureau of Internal Revenue: Provided, That the term 'Commissioner' or 'Commissioner of Industrial Alcohol' and the term 'Supervisor' or 'Supervisor of Permits' wherever used in such regulations, orders, instructions, and forms, shall be held to mean, respectively, 'Deputy Commissioner of Internal Revenue' and 'District Supervisor.'"

Article 136 of Regulations 3 respecting the qualifications of an applicant for a permit to use specially denatured alcohol provides as follows: "* * * This investigation shall include a careful inquiry into the character of the applicant. His previous experience must be carefully inquired into; and should the officers find that the applicant is not reasonably qualified to do or engage in the business proposed, recommendation for approval shall not be made. Inquiry should also be made of reputable firms, persons and associates who have knowledge of the particular line of business being inquired into, and who are familiar with the general requirements of trade in their respective territories, for the purpose of ascertaining the facts necessary to determine whether the applicant is proceeding in good faith in a lawful business enterprise * * *."

Article 143 of Regulations 3 respecting the renewal of permits to use specially denatured alcohol provides as follows: "Applications for renewal of permits to use specially denatured alcohol must be filed with the supervisors not later than August 31st of each calendar year. Such application must be filed and executed in the same manner as applications for original permits and action thereon and issuance thereof shall be governed by the provisions of these regulations relating to original permits; Provided, however, that processes, formulae, preparations, labels, and advertising matter need not be submitted for approval unless called for by the Commissioner."

Article 157 of Regulations 3 respecting the denial and revocation of permits pro-

vides as follows: "All proceedings with respect to denial of permits, issuance of citations, holding of hearings, revocation of permits, and appeals to the commissioner or director, provided for in regulations No. 2, shall be applicable to these regulations."

Section 214 (j) of Regulations 2 respecting the holding of hearings on disapproval of applications for permits provides in part as follows: "The applicant may, within 15 days after the receipt of notice of the disapproval, in whole or in part, of his application (which shall be served as provided in Section 506, for service of citation) apply in writing to be heard by the Supervisor, or his authorized agent, in support of his application. Should a timely application be made the Supervisor shall notify the applicant of the time and place of the hearing which shall be held within 30 days after the receipt of the request therefor unless continued for cause."

The authority for the provisions of Regulations 3 respecting the manufacture, sale, and use of denatured alcohol is found in sections 10 and 13 of title 3 of the National Prohibition Act (27 USCA §§ 80, 83). Section 10 of said act provides in part as follows: "Alcohol lawfully denatured may, under regulations, be sold free of tax either for domestic use or for export."

Section 13 of said act provides as follows: "The commissioner shall from time to time issue regulations respecting the establishment, bonding, and operation of industrial-alcohol plants, denaturing plants, and bonded warehouses authorized herein, and the distribution, sale, export, and use of alcohol which may be necessary, advisable, or proper, to secure the revenue, to prevent diversion of the alcohol to illegal uses, and to place the nonbeverage alcohol industry and other industries using such alcohol as a chemical raw material or for other lawful purpose upon the highest possible plane of scientific and commercial efficiency consistent with the interests of the Government, and which shall insure an ample supply of such alcohol and promote its use in scientific research and the development of fuels, dyes, and other lawful products."

Therefore my conclusion is that the case comes within title 3, the purpose of which under its general terms is largely a matter of executive regulation, and the regulations adopted pursuant thereto appear to be reasonably necessary to accomplish this purpose.

Hence the motion must be denied. The Supervisor may have good and sufficient cause for his action, or he may have acted from improper motives. There has been no hearing. If the plaintiff applies for a hearing in accordance with the regulations within fifteen days after notice of receipt of the disapproval of its application and a hearing thereon is not held within thirty days thereafter or as therein otherwise provided, it may invoke its remedy. If a hearing is had and the determination is adverse, the plaintiff may still seek a review to determine the propriety of the action of the Department.