**HIGGINS v. FOSTER, Prohibition Administrator, et al.**

(Circuit Court of Appeals, Second Circuit. April 5, 1926. On Rehearing June 1, 1926.)

No. 376.

Intoxicating liquors ☞108(2)—Revocation of permit to manufacture denatured alcohol, under regulation that all permits should expire on December 31, 1925, held improper, without giving 15 days' notice and serving statement of facts on which revocation was based (National Prohibition Act, tit. 2, §§ 4, 5, 6, 9 and title 3 [Comp. St. Ann. Supp. 1923, § 10138½ et seq.]).

Revocation of permit to manufacture denatured alcohol, under regulation of Commissioner of Internal Revenue declaring all basic permits under National Prohibition Act, tits. 2, 3 (Comp. St. Ann. Supp. 1923, § 10138½ et seq.), should expire on December 31, 1925, held improper, under title 2, § 9, prescribing that holder of permits should have 15 days' notice and be served with statement of facts on which he was to suffer revocation; section 6 of title 2 not applying to permits for denatured alcohol, and section 5 prescribing procedure on nonpotable permits, when fault lay in quality of product.

Appeal from the District Court of the United States for the Southern District of New York.

Bill by William J. Higgins against John A. Foster, as Prohibition Administrator, and others. From a decree dismissing the bill, plaintiff appeals. Reversed and remanded, with directions.

The bill was to restrain the Secretary of the Treasury, the Commissioner of Internal Revenue, and the Federal Prohibition Administrator of New York from revoking, or otherwise interfering with the plaintiff in the use of, a permit to manufacture denatured alcohol. The facts were that the plaintiff was the owner and manager of a denaturing plant in the city of New York for which on October 21, 1924, he obtained a permit which, in accordance with the regulations at that time existing, was to continue "from the date hereof until surrendered by the holder or canceled by the Commissioner of Internal Revenue for violation of the National Prohibition Act or regulations made pursuant thereto." Under this permit the plaintiff operated until it was canceled on December 31, 1925, under the following circumstances:

On November 14, 1925, the Commissioner of Internal Revenue, with the consent of the Secretary of the Treasury, issued a regulation declaring that all basic permits under titles 2 and 3 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½ et seq.) should expire on December 31, 1925. Acting under this regulation, on November 19th the Commissioner of Internal Revenue gave notice to the local prohibition administrators that all permits for the sale of denatured alcohol might continue in effect until March 31, 1926, but that all applications for renewal should be submitted before December 31st. On December 4th the local prohibition administrator advised the plaintiff of the proposed termination of his permit, but took no other action. The plaintiff, reserving any rights, thereupon filed an application for a renewal of his permit on December 28, 1925, and was granted an interview with the defendant Foster on December 30th, at which time he appeared with his attorneys and was questioned; a record being kept of what took place. On January 1st the prohibition administrator notified him that his application for renewal was disapproved, and the suit was commenced on the next day.

Upon the trial, evidence was taken which justified the conclusion that the plaintiff had been guilty of irregularities in the conduct of his business, and was selling denatured alcohol to persons who to his knowledge were making it into liquor. The details of this evidence it is not necessary to set forth. The learned District Judge held that the regulation of November 14th was authorized by law, that the plaintiff's permit might therefore be terminated without a hearing under section 9 of title 2, and that there was ground for the Commissioner's refusal to renew the patent. He therefore dismissed the bill.

Lewis Landes, of New York City, for appellant.

Emory R. Buckner, U. S. Atty., of New York City (C. D. Williams, of New York City, Asst. U. S. Atty., of counsel), for appellee.

Falk & Orleans, of New York City (Samuel Falk, of New York City, of counsel), for Olivett Distributing Co., amici curiæ.

Before ROGERS, HAND, and MACK, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). That the evidence disclosed upon the trial was amply sufficient to justify a revocation of the permit under section 9, title 2, we have no doubt; but, if Higgins was entitled to a hearing as prescribed by that section, the action of the defendants was irregular, and cannot stand. In what we say we therefore do not wish to be understood as in any sense indicating that the result, except for this irregularity, was not in accordance with law.

We think that section 6 of title 2 has no relation to denatured alcohol, and that there is therefore no statutory provision which sets a term to such permits, whether they be assumed to be authorized by section 4 of title 2 or section 13 of title 3, under which article 21 of Regulation 61 was promulgated by the Commissioner. Section 6 uses the word "liquor," which is defined by section 1 of title 2, and which seems to us clearly to be confined to beverages. It is true that it uses the word "alcohol," but that, especially in its context, precludes denatured alcohol, which is not potable. Hence we think that the permit in its original form was not unlawful, and that the regulation of November 14, 1925, did more than confine permits for denatured alcohol to the terms prescribed by statute. Again, we do not think that by originally making the permit terminable by cancellation the Commissioner could evade, or meant to evade, section 9 of title 2, assuming for the moment that that section applied to them. In effect it had an indefinite duration, and was subject only to such revocation as the law allowed. It did not lie within the power of the Commissioner, by phrasing the permit in the language chosen, to escape any re-

quirements of cancellation which the statute imposed.

Moreover, if section 9 of title 2 applies to permits for denatured alcohol, we cannot see that the Commissioner, under the guise of legislation, may do in gross what he had no power to do in detail. If each holder of a permit was entitled to insist upon a hearing before revocation, it would as much take away his right so created to cancel, along with his own, the permits of all others similarly situated, as though the action had been directed towards him alone. No reason is suggested why it should be possible, by so multiplying the wrong, to give it a character of legality.

Therefore the question comes to whether section 9 of title 2 applies to denatured alcohol. We think that it does. It is clear that, in spite of its heading, title 2 covers more than potable intoxicants. Section 4 describes nonpotable liquids exclusively, with the exception of cider, and especially mentions denatured alcohol. Subdivision (a). It provides for a permit to manufacture, and in other ways regulates dealing in them. Section 5 concerns the products mentioned in section 4, and prescribes the procedure to revoke permits granted under it; but it is limited to defects in the quality of the products themselves. But it is not to be supposed that section 5 was the measure of the Commissioner's power to proceed against holders of permits under section 4. Other abuses were possible than defects in quality, and might be equally intolerable, or more so. On the other hand, we should expect that the procedural protection given holders of permits by virtue of section 5 would not be taken from them, when charged with other abuses in the conduct of their business. In short, we should look for a provision beyond section 5 under which such permits might be revoked, but without opening the door for arbitrary and unreviewable action.

The language of section 9 of title 2 seems to us to bear out this expectation. It is not, like section 6, confined to "liquor," but speaks generally of permits, covering all cases where "any person who has a permit is not in good faith conforming to the provisions of this act." It is quite true that a defect in the product, covered by section 5, would fall within the compass of this general language; but the procedure of that section was special, and that fact accounts, we think, for its presence alongside of section 9, and relieves us from the embarrassment of assuming that it was redundant. In short, section 9 protected all holders of permits, whether for potable or nonpotable intoxicants, while section 5 prescribed a particular procedure in the case of nonpotable permits when the fault lay in the quality of the product.

As section 9 of title 2 prescribed that the delinquent must have 15 days' notice and be served with a statement of the facts on which he was to suffer revocation, it applied to the plaintiff, if we are right, and the regulation of November 14, 1925, denied him a right which the statute gave him. We need hardly add that this conclusion depends in no sense upon any vested right which he had in his permit, but only upon such limitations as were created by the statute itself. While the case is entirely open on the merits to the Commissioner, and while we agree that there was ground for revocation, we do not see our way clear to affirm the defendant's action in the face of the method by which it was accomplished. The permit still remains in force, and the plaintiff is entitled under section 9 to an injunction until it has been forfeited in due form of law.

Decree reversed, and cause remanded, with instructions to grant an injunction, without prejudice to any action taken under section 9.

### On Rehearing.

We see no reason to modify the conclusion at which we originally arrived. Title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, §§ 10138½–10138½z) is too express in its language to leave doubt that it regulated the manufacture of denatured alcohol. Title 3 (Comp. St. Ann. Supp. 1923, §§ 10138¾–10138¾t) is primarily concerned with industrial alcohol, as its title and main provisions show. Denaturing plants are indeed mentioned in sections 10, 13, 14, and 15, and perhaps the titles overlap, but with that we have nothing to do. We cannot ignore sections 4, 5, and 9 of title 2 merely because title 3 gives powers to the commissioner on the same subject. All his regulations are subject to the two titles, as far as relevant, however he may for convenience divide them.

We said before that section 6 had no relation to denatured alcohol, and as respects the first two paragraphs to that we adhere, and for the reason then given that "liquor" includes alcohol, but not denatured alcohol. Indirectly it does touch the manufacture of denatured alcohol, since it sets a period and other conditions upon permits for the purchase of alcohol for manufacturing, of which one form is making denatured alcohol. If our language has been understood to the contrary, we take this occasion to correct it.

The permits to purchase alcohol for denaturing, which section 4 requires, are subject to section 6.

But this does not change the result at bar. The permit reads as follows: "This permit authorizes the operation · of the above-described plant or warehouse, the purchase and receipt of alcohol thereat, and the removal of the manufactured product." All this we understand as no more than a permit to manufacture denatured alcohol, as required by section 4. The words, "the purchase and receipt of alcohol thereat," do not give the plaintiff the right to any specific alcohol. This he must get under permits to purchase under section 4, which, as we have just said, are all subject to the limitations of section 6. To what extent the Commissioner, by refusing such permits, may in substance revoke the permit to manufacture, we do not say, because it is not presented. It is enough that the permit at bar falls under section 9, and was valid ab initio, because it does not fall within section 6.

It is plain that, when the statute was passed, there was no suspicion of the ease with which denaturants could be removed. That, however, can mean no more than that some amendment in the act is necessary to check the grave evil which has now arisen.

For these reasons we adhere to our earlier disposition of the case.

Judge ROGERS, through illness, has not been able to take part in the decision on reargument.