**ROCK v. BLAIR, Commissioner of Internal Revenue, et al.**

(District Court, S. D. New York. July 23, 1926.)

1. Intoxicating liquors ⬿101.

Permittee to manufacture toilet articles, under National Prohibition Act, tit. 2, § 4, is subject to departmental regulations requiring permit to use and to withdraw (Comp. St. Ann. § 10138½b).

2. Intoxicating liquors ⬿101—Permittee to manufacture toilet articles, having incidental permits to use and withdraw denatured alcohol in addition to statutory manufacturing permit, held entitled to injunction against refusal of withdrawal permits, so long as basic permit stood unrevoked (National Prohibition Act, tit. 2, §§ 4, 9, and title 3 [Comp. St. Ann. §§ 10138½b, 10138½dd, 10138¾–10138¾t]; Regulation 61, art. 3).

Where manufacturer of toilet articles had statutory permit to manufacture required by National Prohibition Act, tit. 2, § 4 (Comp. St. Ann. § 10138½b), and incidental permits to use and withdraw denatured alcohol required by only departmental regulations issued under title 3, § 13 (section 10138¾t), the permit to use being indefinite in time and effective until surrendered or revoked for violation of title 3 (sections 10138¾–10138¾t), *held* provisions of title 2, § 9 (section 10138½dd), relating to revocations of permits, covered the permits required by departmental regulations, and permit to use could not be revoked by departmental order that all outstanding permits for use of denatured alcohol should continue only to a particular date, and after that date permittee was entitled to injunction against the denial of withdrawal permits, the issuance of which was mandatory under Regulation 61, art. 3, so long as basic permit stood unrevoked and a revocation proceeding had not been instituted.

In Equity. Suit for injunction by William F. Rock against Davis H. Blair, Commissioner of Internal Revenue, and others. Decree for complainant.

Nathan Lieberman, of New York City, for complainant.

Emory R. Buckner, U. S. Atty., of New York City (U. S. Grant, Asst. U. S. Atty., of New York City, of counsel), for defendants.

AUGUSTUS N. HAND, District Judge. This is a motion to restrain the Prohibition Department from interfering with the withdrawal of specially denatured alcohol by the complainant, for the use of which he has a permit indefinite in time. It provides that it shall be in effect until surrendered by the holder or canceled by the Commissioner of Internal Revenue for violation of the provisions of title 3 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, §§ 10138¾–10138¾t) or the regulations made pursuant thereto.

The Department has attempted to limit such indefinite permits as it did permits for the manufacture of denatured alcohol in the case of Higgins v. Foster, 12 F.(2d) 646, recently considered by the Court of Appeals. The difference between this case and the Higgins Case is that here the permit is not required by the statute, but is issued solely by virtue of the regulations of the Department as a means of exercising control of intoxicating liquor.

Section 13, tit. 3, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¾l), provides that:

"The Commissioner shall from time to time issue regulations respecting the establishment, bonding, and operation of industrial alcohol plants, denaturing plants, and bonded warehouses authorized herein, and the distribution, sale, export, and use of alcohol which may be necessary, advisable, or proper, to secure the revenue, to prevent diversion of the alcohol to illegal uses, and to place the nonbeverage alcohol industry and other industries using such alcohol as a chemical raw material or for other lawful purpose upon the highest possible plane of scientific and commercial efficiency consistent with the interests of the government, and which shall insure an ample supply of such alcohol and promote its use in scientific research and the development of fuels, dyes, and other lawful products."

The business of the complainant is that of a manufacturer of toilet articles, for which a manufacturing permit is required by title 2, § 4, of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½b). The permit for use of specially denatured alcohol, and the withdrawal permits allowing purchase of the same, are in a sense ancillary to the manufacturing permit, and are part of the system of regulation of intoxicating liquors.

Two arguments are made in respect to the permits which are the creatures of regulation only—one by the complainant that they are not provided for by the statute; the other by the government that they are authorized under the power to adopt regulations.

[1] The complainant insists that, as it is doing a business under a manufacturing permit, there is no power by regulation to interfere with securing specially denatured alcohol for use in that business. The position of the complainant is met by the regulations adopted by virtue of section 13 of title 3 of the National Prohibition Act, the validity of which seem to be in general recognized by the Circuit Court of Appeals in their recent decision in the case of Milillo v. Canfield, 14 F.(2d) 113.

[2] The government takes the further position that, as the permits to use specially denatured alcohol, and to withdraw it, are created by departmental rules, they can be terminated by the same authority, and says that the regulation providing that all outstanding permits for the sale or use of denatured alcohol should continue in effect only until December 31, 1925, ended complainant's permit to use specially denatured alcohol, though that permit was in terms to last "until * * * canceled by the commissioner * * * for violation of the provisions of title 3 of the National Prohibition Act or the regulations made pursuant thereto." The validity of this argument depends on whether the provisions of the National Prohibition Act relating to the revocation of permits cover permits issued by departmental regulation.

I held in the case of Wilson v. Bowers, 14 F.(2d) ——, that a person holding a permit for the use of specially denatured alcohol could not be prevented from purchasing the same while his so-called basic permit to use it stood unrevoked. The principal discussion there was as to the meaning of the language of section 9 of title 2 (Comp. St. Ann. Supp. 1923, § 10138½dd), relating to the revocation of permits. There was then no regulation such as has been lately adopted, providing that all outstanding permits for the sale or use of denatured alcohol continue in effect until December 31, 1925, and that, pending a hearing for revocation, withdrawals might be suspended. All parties assumed that the permit to use specially denatured alcohol was valid, and the only question discussed was whether the suspension of the permit provided for in section 9 of title 2 of the National Prohibition Act could be had during the proceeding for revocation in the Department, or must wait until an action in this court to review the decision in that proceeding was instituted.

After reconsidering the Wilson Case, I

am quite satisfied that it was correctly decided and that some of the language (which I shall hereafter refer to) in the Higgins Case does not militate against it. The Higgins Case treated statutory permits required by section 4 of title 2 of the National Prohibition Act for the purchase of alcohol as not merely incidental to a permit to manufacture but as independently necessary.

The argument that a business conducted under a lawful permit might be destroyed by cutting off the supply of purchase permits would apply as much to druggists as to a manufacturer of denatured alcohol or of toilet articles. The permit to purchase alcohol involved in the Higgins Case was required by statute. The permits to use and withdraw specially denatured alcohol involved in the case at bar are required by the regulations. The permit for use of specially denatured alcohol must, I believe, be regarded as incidental to the statutory permit for manufacturing toilet articles, required by section 4 (d), and as a reasonable regulation in aid of the control of intoxicating liquors.

Since the decision in Higgins v. Foster, I feel bound to hold that the regulation ending the term of the permit for use of specially denatured alcohol on December 31, 1925, does not affect existing use permits. While they were in a general sense issued subject to regulations made subsequent thereto, I do not regard a regulation shortening their tenure and amounting to a revocation as one which can virtually be read into the permit itself, if the words of section 9 of title 2 of the National Prohibition Act include revocation of permits for use of specially denatured alcohol. The text of the permit, "Until * * * canceled by the Commissioner * * * for violation of the provisions of title 3 of the National Prohibition Act or the regulations made pursuant thereto," must, I think, be read in the light of the general provisions of law governing revocations of permits. Section 9 of title 2 prescribes how this shall be effected, and gives the permittee a review of the decision of the Commissioner, if adverse to him, in this court. Section 9 is sweeping in its provisions in describing those against whom a revocation proceeding lies as "any person who has a permit." This interpretation seems to be required by the recent decision of the Circuit Court of Appeals in the case of Milillo v. Canfield, supra, where a refusal to issue a permit to use specially denatured alcohol in connection with the manufacture of toilet waters was treated as reviewable under section 6 of title 2 of the National Prohibition

Law (Comp. St. Ann. Supp. 1923, § 10138½c). Were it not for this decision, it might well be that no permit for the use of specially denatured alcohol could be required, and that the regulations requiring such permits would be invalid. This is because of the language of the opinion of the Circuit Court of Appeals in the case of Higgins v. Foster where it was said on rehearing "that section 6 had no relation to denatured alcohol." However the opinion also said:

"Indirectly it does touch the manufacture of denatured alcohol, since it sets a period and other conditions upon permits for the purchase of alcohol for manufacturing, of which one form is making denatured alcohol."

That decision held that the term "liquor," as used in the National Prohibition Act, means liquor containing one-half of 1 per centum or more of alcohol by volume, fit for use for beverage purposes. The language above quoted was used in arguendo and mentioned certain exceptions which did not come within its general terms. The case of Milillo v. Canfield apparently has added to these exceptions suits in this court to review decisions of the Commissioner as to permits.

Now nothing is said in the complaint or moving papers about the existence and disregard by the Department of an outstanding permit to purchase or withdraw specially denatured alcohol, but it is complained that withdrawal of alcohol is not permitted.

Article 3 of Regulation No. 61 provides that a manufacturer, on the receipt of the permit to use specially denatured alcohol, will make application "from time to time * * * for the issuance of one or more withdrawal permits. * * * The administrator shall promptly approve such applications."

As the regulation stood prior to recent supplement, the issue of such withdrawal permits would appear to be mandatory if a permit for use stood unrevoked, and such a situation apparently was, in substance, before me in the case of Wilson v. United States. But, prior to the applications for withdrawal in the present case, a regulation has been promulgated which reads as follows:

"All proceedings with respect to the issuance of citations, holding of hearings and revocation of permits provided for in Regulation No. 60 shall be applicable to these regulations."

"When the administrator has reason to believe that a permittee has committed a flagrant violation of the law, or that the public

interests would seriously suffer if further withdrawals of alcohol or specially denatured alcohol were permitted, he may in his discretion, at the time of the citation or subsequent thereto, direct that until further notice no further withdrawals of alcohol or specially denatured alcohol be made by the permittee. The administrator may reinstate the withdrawals, suspended by him, upon a showing of good cause."

Now this supplement to the regulations is based upon the existence of a proceeding to revoke the so-called basic permit for the use of denatured alcohol. No such proceeding has been taken, but the Department has relied upon its authority to cancel the permit by a regulation shortening its indefinite term. I hold that the basic permit is still valid, unrevoked, and outstanding, and shall grant an injunction, as I did in the Wilson Case, enjoining the denial of withdrawal permits unless and until such a revocation proceeding shall be taken pursuant to section 9 of title 2 of the National Prohibition Act and the administrator shall duly direct that no further withdrawals of specially denatured alcohol be made by the permittee or the basic permit be revoked. These withdrawal permits are the creatures of regulation, but, as the case now stands, I am of the opinion that they must be granted under the terms of the regulations themselves, because the basic permit has not been revoked nor a valid revocation proceeding started.

Settle order on notice.