HELVERING, Com'r of Internal Revenue, et al. v. DRUGGISTS' SPECIALTIES CO., Inc.

No. 5609.

Circuit Court of Appeals, Third Circuit.

March 25, 1935.

Charles D. McAvoy, U. S. Atty., of Philadelphia, Pa. (Blair McK. Ilderton and Edward C. Dougherty, both of Philadelphia, Pa., of counsel), for appellants.

David S. Malis, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

Druggists Specialties Company, Inc., hereinafter called the complainant, held a permit "Issued under Title III of the National Prohibition Act" (section 1 et seq. [27 USCA §§ 63, 71 et seq.]), and extended from year to year, authorizing the monthly withdrawal—tax-free—of 4400 wine gallons of specially denatured alcohol, Formula No. 39–B, to be used in the manufacture of certain approved toilet preparations. On March 31, 1933, the Supervisor of Permits issued a citation under section 9 of title 2 of the act (27 USCA § 21), charging that the complainant had in bad faith violated the terms and conditions of its permit

744

and certain provisions of the National Prohibition Act and Regulations promulgated thereunder, particularly section 4 of title 2 (27 USCA § 13), in that (1) during one month it manufactured 4532.7 gallons of hair tonic not in accordance with the formula and sample approved for this preparation; (2) that upon simple distillation the product was fit for beverage purposes; (3) that complainant disposed of the same under circumstances which indicated it was to be used for beverage purposes without payment of tax.

On April 5, 1934, the Hearer, on reconsideration, found that the evidence sustained the charges in the citation and on his recommendation the Supervisor, under authority of section 9 of title 2, revoked the permit.

On April 21, 1934, the complainant, though asserting that sections 4 and 9 of title 2 of the National Prohibition Act are no longer in force, filed a bill in the District Court under authority of section 9 averring compliance with section 4 and seeking reversal of the Supervisor's action. The learned court, without considering the question whether the facts supported the order, held that since the repeal of the Eighteenth Amendment to the Constitution the Supervisor had no authority to exercise discretion in revoking or refusing permits for use of specially denatured alcohol tax-free. Accordingly it reversed the Supervisor's order and directed that the permit be reinstated. The Commissioner of Internal Revenue and other defendants in the bill appealed, raising the questions which were argued and decided below:

1. Did repeal of the Eighteenth Amendment render inoperative title 3 and sections 4 and 9 of title 2 of the National Prohibition Act in so far as they relate to permits for specially denatured alcohol for use in the arts tax-free?

The answer to this question is also the answer to the second question:

2. Since repeal of the Eighteenth Amendment has the Supervisor authority to revoke permits for the use of specially denatured alcohol?

A reading of the National Prohibition Act discloses that the major portion of title 2 is directed to carrying out the inhibitions of the Eighteenth Amendment in respect to the manufacture, sale and transportation of alcohol for beverage purposes; that title 3 is directed to permitting and promoting the use of non-beverage alcohol for industrial purposes, the issuance of permits therefor and the promulgation of regulations affecting the same; and that sections 4 and 9 of title 2 relate in part to the objects of title 3.

Whether title 3 and sections 4 and 9 of title 2 are still in force depends, under the ruling in United States v. Chambers, 291 U. S. 217, 54 S. Ct. 434, 78 L. Ed. 763, 89 A. L. R. 1510, on whether their enactment in the National Prohibition Act rested on the power which the Eighteenth Amendment gave the Congress and whether, accordingly, the provisions fell with its repeal. Admittedly, title 3 and some of the sections of title 2 were not enacted under authority of the Eighteenth Amendment, for they were enacted before its adoption, were addressed to different though related matters, expressly to take effect at once after the passage and upon approval of the act. If these provisions of the National Prohibition Act did not require the sanction of the Eighteenth Amendment for their enactment it follows that when the Eighteenth Amendment was repealed no constitutional sanction was drawn from under them. Thus, not being devitalized by the Twenty-First Amendment, they remain as before, as if no Eighteenth Amendment had been adopted and repealed. Therefore these provisions of several parts of the National Prohibition Act rest necessarily on the general powers of the Congress exclusive of power conferred by the Eighteenth Amendment.

Evidently the Congress entertained the same view for, after repeal of the Eighteenth Amendment, it set about to repeal the District of Columbia Alcohol Beverage Control Act, 48 Stat. 319, approved January 24, 1934. It repealed the National Prohibition Act in the District of Columbia "with the exception of title III, and section 4 of title II insofar as it affects denatured alcohol." Section 1. It did not expressly except section 9 of title 2 from repeal. That section, however, we regard to be so closely linked with provisions of title 3 that it is a part of the system established under title 3 which admittedly remains in force. Senate Report No. 15, Sixty-sixth Congress, First Session 1919; House Report, H. R. Vol. 1; Higgins v. Foster (C. C. A.) 12 F.(2d) 646; Allied Drug and Chemical Corp. v. Commissioner (D. C.) 10 F. Supp. 619; United States v. Philip H. Warshaw, Inc. (D. C.) 8 F. Supp. 95.

We hold that title 3 of the National Prohibition Act is still in force and that sections 4 and 9 of title 2, not resting on constitutional authority for their enactment, are likewise in force if they relate to the regulation and collection of the government's revenue as well as, at one time, to the inhibitions of the Eighteenth Amendment. That is the next question.

The complainant insistently urges that all the provisions here in question were deprived of their statutory vitality and were effectively repealed by the adoption of the Twenty-First Amendment because they all relate to the "dominant purpose" of the National Prohibition Act, namely; to prevent the manufacture, sale and transportation of intoxicating liquor as a beverage. Ma-King Products Co. v. Blair, 271 U. S. 479, 46 S. Ct. 544, 70 L. Ed. 1046. If this were true it would be an end to the case. But it is certainly true, under decisions by the Supreme Court, that liquor sold in violation of the National Prohibition Act, when in full force, was taxable and proceedings for taxes and penalties could, under appropriate revenue statutes, be had against such liquor and against those possessing it. Thus the act had a revenue aspect as well as the purpose to abolish the use of liquor as a beverage. Indeed, section 13 of title 3 of the National Prohibition Act (27 USCA § 83) itself says that the Commissioner shall from time to time issue regulations in respect to the manufacture, use and sale of alcohol "to *secure the revenue* * * *. But regulations promulgated by the Commissioner in respect to the use of denatured alcohol and permits issued in compliance with them were not first made under title 3 of the National Prohibition Act but were made in pursuance of statutes in earlier periods having to do exclusively with the protection and collection of federal revenues. Manifestly, such regulations were necessary, and still are necessary, because of the fact that denatured alcohol when used in the arts was, and still is, tax-free. In order that the thing regulated, namely alcohol, should not be converted from its tax-free condition for industrial purposes into a tax-imposed condition for drinking purposes and be sold without payment of the tax, regulation is imperative. Specifically to prevent the withdrawal of tax-free alcohol, its conversion into taxable alcohol and its sale without payment of the tax, the Act of June 7, 1906, c. 3047, 34 Stat. 217, amended and extended by the Act of March 2, 1907, 34 Stat. 1250, and the Act of October 3, 1913, c. 16, § 4, par. N, subsec. 2, 38 Stat. 114, 199, (26 USCA §§ 487, 488), Selzman v. United States, 268 U. S. 466, 45 S. Ct. 574, 69 L. Ed. 1054, conferred regulatory powers on the Commissioner of Internal Revenue to prescribe "the conditions upon which said alcohol may be withdrawn free of tax." The statutes however said nothing about permits. They apparently left that to the Commissioner under authority which it conferred upon him to "make all necessary regulations for carrying into effect the provisions of this Act." The Commissioner made such regulations and by Regulations No. 30, revised August 22, 1911 and further revised October 12, 1917, provided, among other things, for a permit system to control the withdrawal, sale and use of specially denatured alcohol free of tax. Article 52 of Regulations 30 provided: "That permits when issued will remain in force until revoked or cancelled; but in no instance will permit be granted unless upon careful inquiry it shall satisfactorily appear that the applicant is entitled to the full confidence of the government." Every manufacturer before procuring specially denatured alcohol or recovering completely denatured alcohol for re-use was required to file with the Commissioner of Internal Revenue a notice of application for permit and a bond, and article 79 of the Regulations provided: "upon receipt of the prescribed notice and bond the collector will, if the same be satisfactory and applicant is found to be entitled to the confidence of the department, endorse his approval thereon and the collector will issue to the applicant a withdrawal permit."

Of course the Acts of 1906, 1907 and 1913 were essentially and exclusively revenue measures enacted by the Congress under its constitutional taxing powers and Regulations 30 were promulgated to prevent fraud upon the revenues and ensure their collection. The original control of tax-free denatured alcohol through a permit system was not devised for preventing the manufacture, sale and transportation of intoxicating liquor for in those times there were no such constitutional inhibitions. It was a revenue protection system in force years before the Eighteenth Amendment was adopted and was the same in design and purpose as that contemplated in title 3 and sections of title 2 of the National Prohibi-

tion Act so far as they had to do with revenues.

Regulations No. 30 controlled until January 31, 1920 when Regulations No. 61 were promulgated pursuant to title 3 of the act. Regulations 3, superseding 61, became effective April 1, 1931 and upon the abolition of the Bureau of Industrial Alcohol were continued in force pursuant to Treasury Decision 4432 approved May 10, 1934. These regulations were made under authority of statutes and when made and enforced through the years were tacitly recognized by the Congress in enacting succeeding revenue statutes. Implicit in them was a discretionary power (conferred, or, if assumed, never challenged) in granting and revoking permits.

The contested difference between pre-amendment and post-amendment regulations and procedures in respect to withdrawal and use of tax-free denatured alcohol is brought into view by the opposing contentions of the parties. The complainant as disclosed in its bill (filed under authority of the very section 9 of title 2 which it says expired on the repeal of the Eighteenth Amendment) contends that before the National Prohibition Act no discretion was reposed in the treasury official issuing permits, that on an application for a permit accompanied by a bond he was bound to issue a permit and take a chance on the permittee's behavior with respect to the proper use of the alcohol. Although permits, before the National Prohibition Act, were issued only after a finding by the government of its full confidence in the applicants, to remain in force "until revoked or cancelled", the comlainant maintains that, once issued, they could not be revoked; and that today, after the repeal of the Eighteenth Amendment, permits to withdraw and use denatured alcohol tax-free must, on filing bond, be issued to applicants without regard to the government's confidence in them and, once issued, they can not be "revoked or cancelled," no matter how flagrantly and repeatedly the holders may violate the permits and deprive the government of its lawful taxes. In contrast with this contention, the government's position is that prior to the Eighteenth Amendment Regulations 30 and Article 79 conferred authority upon the Commissioner to investigate the applicant and if in his discretion the applicant was "found to be entitled to the confidence of the department" he should endorse his approval thereon and the collector should issue to the applicant a withdrawal permit; and if not entitled to the department's confidence the application should be refused or, if previously granted, the permit should on a proper showing be revoked; and that since the Eighteenth Amendment and also since its repeal the same discretion is reposed in the Commissioner. Clearly no one has an inherent right to withdraw and use denatured alcohol tax-free. It is a privilege accorded by the Congress on terms and conditions imposed upon those who accept it. Whether or not the early regulations and practices in regard to permits for withdrawal of tax-free denatured alcohol under statutes before the National Prohibition Act reposed discretion in the department to issue and revoke permits, the fact remains that the provisions of the National Prohibition Act here in question conferred that discretion for protection and collection of federal revenues, and if those provisions have not fallen by the withdrawal of constitutional authority for their enactment they still remain and the discretion may still be exercised.

We have not been convinced that they have lost their vitality as revenue measures and that the Supervisor exceeded his authority in passing on the qualification of the holder of the permit in this case and in doing so committed a nugatory act in revoking its permit for malfeasance. Nicol v. Ames, 173 U. S. 509, 514, 19 S. Ct. 522, 43 L. Ed. 786. We are therefore constrained to find that the learned trial court fell into error in holding as matter of law against the Supervisor's action of revoking the permit, in reversing the same and directing that the permit be reinstated.

The remaining question in the case is whether the action of the Supervisor in revoking the complainant's permit was wholly unsupported by evidence or clearly arbitrary or capricious. The learned trial court, having in mind its views on the law, passed by that question of fact altogether. As the District Court on the complainant's bill is the trier of facts and as no facts have been found, the validity of the Supervisor's order in that respect is not presently here for review. Therefore, on reversal, the case is remanded to the District Court with instructions to proceed on the bill in conformity with the law of the subject.