## UNITED STATES v. BORNN et al.

### No. 206.

Circuit Court of Appeals, Second Circuit.

June 12, 1939.

Holthusen & Pinkham, of New York City (Henry F. Holthusen and Spencer Pinkham, both of New York City, of counsel), for appellant Bornn.

Simpson, Thacher & Bartlett, of New York City (Graham Sumner, Robert H. O'Brien, Richard Jones, and James P. Murtagh, all of New York City, of counsel), for appellant Royal Indemnity Co.

Vine H. Smith, U. S. Atty., of Brooklyn, N. Y. (William S. Perlman, of Brooklyn, N. Y., and William A. Tarver, of Washington, D. C., of counsel), for appellee.

Before L. HAND, CLARK, and PATTERSON, Circuit Judges.

PATTERSON, Circuit Judge.

The United States, after trial on the merits with jury waived, recovered judgment for $100,000 and interest against both defendants on three bonds covering use of specially denatured alcohol by the defendant Bornn, and for the further sum of $303,858.22 against Bornn alone for taxes. The defendants' appeal raises questions of law.

The bonds were given under the Denatured Alcohol Act of June 7, 1906, 26 U.S.C.A. §§ 1320–1323, supplemented by title 3 of the National Prohibition Act, 27 U.S.C.A. §§ 71–89, and under Regulations 61 of the Treasury Department. By the Denatured Alcohol Act, 26 U.S.C. §§ 1320–1323, 26 U.S.C.A. §§ 1320–1323, alcohol may be withdrawn for use in the arts and industries without payment of tax, provided it be mixed with denaturing materials making it unfit for beverage purposes. Distillers, manufacturers, dealers and others handling or using such denatured alcohol are required to keep such records, execute such bonds and render such returns as the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury may require by regulations. The Act forbids the use of such tax-free alcohol for manufacture of a beverage and also forbids the recovery of pure alcohol from it by redistillation or other means except as permitted by regulations. By title 3 of the National Prohibition Act, 27 U.S.C. §§ 71–89, 27 U.S.C.A. §§ 71–89, dealing with industrial alcohol, it was provided that alcohol produced at industrial alcohol plants or stored in bonded warehouses might be withdrawn tax free to denaturing plants for denaturation, that alcohol lawfully denatured might be sold free of tax, and that the Commissioner should issue regulations respecting establishment, bonding and operation of industrial alcohol plants, denaturing plants and bonded warehouses, and respecting distribution, sale and use of alcohol, "which may be necessary, advisable, or proper, to secure the revenue, to prevent diversion of the alcohol to illegal uses", 27 U.S.C.A. § 83, and so on. By Regulations 61, in force at the time the bonds were made, manufacturers desiring to use specially denatured alcohol were required to file application for permit and to furnish bond on Form 1480, the penal sum of the bond to be graduated according to the quantity to be used.

The three bonds followed the provisions given in Form 1480. They were made by Bornn as principal and Royal Indemnity Company as surety. The first, dated July 19, 1921, and for the sum of $25,000, was in support of an application made by Bornn for a permit to use specially denatured alcohol of formula 39A in the manufacture of bay rum, the estimated quantity being 5,000 gallons a month. Permit was accordingly issued on August 5, 1921. The bond recited the application to use specially denatured alcohol of formula 39A for manufacture of bay rum, and contained this condition: "Now, therefore, the condition of this obligation is such that if there be no material false statement in the application for such permit, and the said principal shall not violate the terms of such permit, and shall transport, store, and use such denatured alcohol in accordance with the law and regulations made pursuant thereto, and shall in all respects fully and faithfully comply with all provisions of law now or hereafter enacted and all regulations promulgated thereunder respecting such transportation, storage, and use, and shall pay for all such

denatured alcohol illegally or unlawfully diverted, lost, or unaccounted for in violation of such permit and law and regulations at the rate of $4.50 per wine gallon, and in addition thereto shall pay all penalties and fines imposed, then this obligation to be void; otherwise to remain in full force and virtue".

The second bond, bearing no date but shown to have been executed on or about March 30, 1922, was for $25,000. It was delivered in support of an application by Bornn for a permit to use specially denatured alcohol of another formula, formula 39B, in the manufacture of rubbing alcohol, in quantities estimated at 5,000 gallons a month. The bond contained the same condition as the first bond. Permit to use specially denatured alcohol of formula 39B for manufacture of rubbing alcohol was issued on April 22, 1922.

The third bond, dated August 31, 1922, for $50,000, was in support of an application made on September 9, 1922, to use specially denatured alcohol formula 39B for making rubbing alcohol, in estimated quantities of 30,000 gallons monthly. This application was the same as the second, save that the estimated quantities of specially denatured alcohol to be withdrawn were greater. The bond contained the same condition as the two earlier bonds. No formal permit was issued at the time. The bond was filed and approved, and in accordance with regulations and practice then prevalent the collector of internal revenue was directed to allow Bornn to withdraw the increased gallonages of specially denatured alcohol given in his application. The bond was regarded as effective from the time it was filed and approved. So the matter stood until the end of 1925, when by general regulation all permits were cancelled as of March 31, 1926. See Higgins v. Foster, 2 Cir., 12 F.2d 646. Bornn filed a new application on December 30, 1925, for permit to use specially denatured alcohol in manufacture of rubbing alcohol and bay rum, and in due course received a new permit on March 31, 1926, for the use of specially denatured alcohol, formula 39A for bay rum and formula 23A for rubbing alcohol. The bonds were unchanged.

At the trial there was proof that over the period from January 1, 1924, to August 31, 1926, Bornn purchased or "withdrew" large quantities of specially denatured alcohol under his permits and that while he went through the process of mixing the denatured alcohol with other ingredients into a product called rubbing alcohol, he did so merely to sell the rubbing alcohol to the trade in illicit liquor, with the design that purchasers should "clean" it of denaturants and other ingredients and sell the recovered alcohol for beverage purposes. The proof on this feature of the case was ample. Among other things, Bornn offered to supply customers with a white powder for the removal of the denaturants; he made experiments in their presence to prove the efficacy of the powder; he instructed salesmen to sell to those who supplied illicit stills but to make it appear that orders came from wholesale drug concerns. The rubbing alcohol was 92 percent pure alcohol at first; later the percentage was reduced to 70. The district court found, and it is not seriously disputed here, that Bornn's sales of rubbing alcohol were in the main to persons who to his knowledge and with his assistance and procurement delivered the rubbing alcohol to stills, where the substances that had been added were removed and potable spirits recovered. The court found that at least 96,616 gallons of specially denatured alcohol, the quantity alleged in the complaint, were thus diverted by Bornn from nonbeverage use to beverage use.

The complaint contained three counts. The first was on the three bonds; it alleged that the condition that Bornn should use the denatured alcohol in accordance with the law and regulations was broken, and that by reason thereof the defendants were liable for the tax then imposed on distilled spirits at the basic rate of $2.20 per proof gallon, up to the $100,000 limit of the bonds. The second count was also on the three bonds; it charged breach of the condition that Bornn should pay $4.50 per wine gallon "for all such denatured alcohol illegally or unlawfully diverted, lost, or unaccounted for in violation of such permit and law and regulations," and damages for the limit of the bonds were claimed. The first and second counts were thus in the alternative. The third count was against Bornn alone and sought to fasten on him a tax liability for 96,616 wine gallons of denatured alcohol diverted to beverage use. The 96,616 wine gallons, it was alleged, were the equivalent of 183,571 proof gallons, and tax at the basic rate of $2.20 per proof gallon was claimed, $403,858.22, or $303,858.22 with the $100,000 lia-

bility on the bonds deducted. The district court gave recovery for the full amounts demanded, the sum of $100,000 against both defendants on the bonds, and the further sum of $303,858.22 against Bornn for taxes.

■ We consider first the liability of the defendants on the three bonds. As to the first bond no breach of condition was proved. The first bond was the bay rum bond. The condition in that bond, read with the recital in the bond, covered compliance with the law and regulations concerning specially denatured alcohol of formula 39A for use in bay rum. There was no evidence that any specially denatured alcohol of that formula or any bay rum made from it was misused. The condition in the bond was not broken. The government concedes that this is true if the bond is taken as it was written. The argument is that the condition of the bond was later broadened to cover specially denatured alcohol of formula 39B for use in rubbing alcohol. The argument rests on the fact that at the top of the later bonds the word "additional" appeared. It was not shown who wrote "additional" on the later bonds. Even if it were placed on the bonds by the surety or by Bornn, there was no evidence that it was understood by them to mean that a bond already on file was altered so as to cover the same risks as the later bonds. For all that appears, the word "additional" meant merely that there was in force an earlier bond of the same principal and the same surety which the bond in question did not supersede. It was error to hold the defendants liable on the first bond.

■ The second bond and the third bond covered the withdrawal and use of specially denatured alcohol of formula 39B for manufacture of rubbing alcohol. The condition was that Bornn should comply with the law respecting use of specially denatured alcohol and should pay $4.50 per wine gallon for all specially denatured alcohol diverted by him in violation of law. In effect, Bornn and the surety company made a contract with the government that if it would allow Bornn to withdraw specially denatured alcohol free of tax for the purpose stated in the applications, Bornn would obey the law regarding use of denatured alcohol and would pay to the government $4.50 per wine gallon for any alcohol diverted to unlawful uses, up to the limit of $75,000. What Bornn actually did

was to concoct his rubbing alcohol out of the denatured alcohol and induce dealers in unlawful liquor to purchase it. The district court found it to be the fact that his purpose in withdrawing specially denatured alcohol and mixing it with a small amount of other ingredients to form what he called rubbing alcohol was merely to sell his product to those who supplied illicit stills with alcohol for redistillation. That such conduct was an unlawful diversion of the specially denatured alcohol admits of no doubt. It was a plain violation of the Denatured Alcohol Act and also of section 4 of title 2 of the National Prohibition Act, 41 Stat. 309, 27 U.S.C.A. § 13. See Higgins v. Foster, 2 Cir., 12 F.2d 646; Bilodeau v. United States, 9 Cir., 14 F.2d 582; Helvering v. Druggists' Specialties Co., 3 Cir., 76 F.2d 743. There is no reason why the defendants should not be required to do what they agreed to do, pay $4.50 per wine gallon for all specially denatured alcohol unlawfully diverted, not to exceed the total of $75,000 fixed by the bonds. See United States v. Frost, 5 Cir., 80 F.2d 341, 343. At $4.50 per wine gallon the gallonage diverted came to far more than $75,000.

■ The defendants say that there was no diversion of the specially denatured alcohol, that Bornn's misconduct had to do only with rubbing alcohol and that rubbing alcohol was not covered in the bonds; hence there was no breach of the condition in the bonds. United States v. Hartford Accident & Indemnity Co., D.C., 15 F. Supp. 791, is an authority in support of the argument. We find it unconvincing. With the finding that Bornn obtained the specially denatured alcohol to the end that it might be passed on to purchasers in the form of rubbing alcohol and then cleaned of denaturants and other ingredients and used for beverage purposes, it is accurate to say that the specially denatured alcohol was diverted to beverage purposes, the rubbing alcohol being only an intervening step. Various Items of Personal Property v. United States, 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558; see also Bilodeau v. United States, supra.

■ The defendants also say that the provision for payment of $4.50 per wine gallon for diverted alcohol was an invalid penalty. The attack in reality is aimed at the regulations, for the bonds were in the form specified in the regulations. We see no reason to doubt the validity of this provi-

sion in the bonds. Congress saw fit to waive payment of tax on denatured alcohol devoted to nonbeverage uses, but took pains to direct the Commissioner to make regulations with a view to protect the revenue and prevent diversion of the alcohol to taxable uses. The Denatured Alcohol Act was still in force, Bilodeau v. United States, supra, and under that act the Commissioner was told in so many words to take bonds from manufacturers who availed themselves of the chance to get denatured alcohol free of tax. With these statutory warrants the Commissioner issued regulations requiring manufacturers who obtained specially denatured alcohol to put up a bond bearing the conditions of the bonds involved in this case. The condition that the permittee should pay $4.50 per wine gallon for all denatured alcohol unlawfully diverted was a measure aimed at preventing fraud on the revenue and diversion of the alcohol to unlawful uses, and we cannot say that it was too drastic. The rate of $4.50 per wine gallon was somewhat in excess of the nonbeverage rate of tax on distilled spirits, but was well below the beverage rate of tax. We are of opinion that the regulation calling for such a bond was fairly within the power delegated to the Commissioner, and that the situation was the same as if Congress had itself determined the form of bond to be used. In view of this conclusion, we pass the question whether the bonds would be enforceable if beyond the Commissioner's power, in the character of bonds which were entered into voluntarily and under which the principal derived benefits, as in United States v. Hodson, 10 Wall. 395, 409, 19 L.Ed. 937.

■■ It is said that the condition to pay $4.50 per wine gallon for alcohol diverted to unlawful uses is not related to any financial damage suffered by the United States. That may be true, but the efficacy of the condition is not impaired. With a bond of this type running to the government, it is of no moment that the government suffered smaller damage or no damage measurable in money. Clark v. Barnard, 108 U. S. 436, 2 S.Ct. 878, 27 L.Ed. 780; United States v. Dieckerhoff, 202 U.S. 302, 26 S. Ct. 604, 50 L.Ed. 1041; United States v. Montell, Taney 47, Fed.Cas.No.15,798; Illinois Surety Co. v. United States, 2 Cir., 229 F. 527. The bonds, containing as they do a condition for the payment of a definite sum per gallon of alcohol diverted, are to be distinguished from general compliance bonds of the sort dealt with in United States v. Chouteau, 102 U.S. 603, 26 L.Ed. 246, and in United States v. Zerbey, 271 U.S. 332, 46 S.Ct. 532, 70 L. Ed. 973. Here it was the intention of the parties to dispense with proof of damages and to fix the specified sum per gallon of diverted alcohol as a definite amount to be paid if the permittee diverted alcohol in fraud of the government. We know of no law which defeats recovery on the agreed basis. The statute of limitations on collection of penalties and forfeitures, 28 U.S.C. § 791, 28 U.S.C.A. § 791, does not bar action to recover on the bonds. United States v. Mack, 295 U.S. 480, 55 S.Ct. 813, 79 L.Ed. 1559; Durning v. McDonnell, 2 Cir., 86 F.2d 91.

■ The surety makes a final point of the fact that the formula for the denatured alcohol withdrawn by Bornn was changed at the direction of the government after the bonds were made and delivered. The change made was by general regulation, and the effect of the added denaturant was to make it harder to "clean" the denatured alcohol. The risk of the surety was diminished. There is no merit in the point.

It follows that the defendants were liable on the second and third bonds by reason of Bornn's failure to pay $4.50 per gallon for the 96,616 gallons of denatured alcohol unlawfully diverted, up to the $75,000 limit of those bonds, as claimed in the second count. The first count, claiming recovery on the bonds at the tax rate of $2.20 per gallon, is alternative to the second count, and we need not discuss whether it states a sound theory of liability.

It remains to consider the liability of Bornn for taxes under the third count. It was charged in the complaint that he diverted 96,616 wine gallons, the equivalent of 183,571 proof gallons, and that he thereby became liable for tax at $2.20 per proof gallon, or $403,858.22. The district court found on the facts that the diversion had occurred, and it adopted the conclusions of law alleged in the complaint, entering judgment for $403,858.22, less $100,-000 recovered on the bonds.

■■ The taxing act on distilled spirits in effect prior to February 26, 1926, was section 600(a) of the Revenue Act of 1918, 40 Stat. 1105, whereby there was imposed on distilled spirits a tax of $2.20 (or $6.40 if withdrawn for beverage purposes or for use in the production of a beverage) per

647

proof gallon · or wine gallon when below proof, the tax to be paid by the distiller or importer. The Revenue Act of 1921, 42 Stat. 285, added the proviso that if tax at the nonbeverage rate of $2.20 were paid and the spirits were diverted to beverage use, there should be an additional tax of $4.20, "to be paid by the person responsible for such diversion". The United States, it may be noted, made no claim that Bornn was liable at the beverage rate of $6.40, presumably because of United States v. Springer & Lotz, 2 Cir., 69 F.2d 819, and like decisions in the District Court, which were taken to hold that the difference between the beverage rate and the nonbeverage rate was a penalty rather than a tax and so barred by limitation. It insisted that Bornn was liable at the nonbeverage rate of $2.20, that imposition being clearly a true tax. United States v. One Ford Coupé, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279, 47 A.L.R. 1025. We are of opinion that the taxing statute did not touch the case of Bornn, a manufacturer who purchased denatured alcohol free of tax and caused its diversion to beverage uses. The tax was a distiller's tax, and Bornn was not a distiller in any sense of the word. The article which he handled was exempt from tax by express provision of law. For all that appears, he purchased the denatured alcohol from concerns that held it free of tax. It would be quite unreasonable to suppose that taxwise the denatured alcohol was in a state of flux, now free of tax and now taxable, depending on the good faith or bad faith of successive owners. The government evidently realized all along that a manufacturer in Bornn's position was not liable for tax on denatured alcohol even if he diverted it, for the manufacturer's bond called for by the regulations, as we have seen, was silent as to obligation to pay tax; it contained instead an independent engagement to pay a stated sum for each gallon of alcohol diverted. The case for tax liability seems to be rested on the provision in the several revenue acts that in case of willful attempt to defeat or evade tax, assessment or proceeding to collect may be resorted to at any time. See Revenue Act of 1926, section 1109, 26 U.S.C. § 1432, 26 U.S.C.A. § 1432. Plainly this will not do. The provision concerns merely the period of limitation on assessment and collection of tax; it does not purport to impose liability on a person not otherwise liable for tax.

The Revenue Act of 1926, effective February 26, 1926, made a change, and part of the period involved in this case was after that date. By section 900(a)(1), 44 Stat. 104, the tax on distilled spirits was continued at the basic rate of $2.20 until January 1, 1927, to be paid by the distiller or importer; and by 900(a)(4) it was provided that on all distilled spirits diverted to beverage uses or for use in production of a beverage a tax of $6.40 should be collected, "to be paid by the person responsible for such diversion." This provision as to tax on diverted spirits obviously comes closer to the case of Bornn than did the statutes preceding it. The Tenth Circuit and the Sixth Circuit have taken the view that the $6.40 rate, called a tax in the 1926 act, is in reality a penalty. United States v. Jun, 10 Cir., 48 F.2d 593; United States v. Glidden Co., 6 Cir., 78 F.2d 639. The Fourth Circuit has recently held it to be a true tax. United States v. United States Industrial Alcohol Co., 4 Cir., 103 F.2d 97. We are not put to a choice between the opposing authorities, nor are we called upon to say whether section 900(a)(4) of the 1926 act would fit the case of Bornn. The government has never asserted the existence of any liability on his part by reason of that provision. Neither in the complaint nor on the trial was the claim made that the diversion clause of the 1926 act applied. All that was claimed (apart of course from the claim on the bonds) was that Bornn was liable for the ordinary distiller's tax at the $2.20 rate. He clearly was not liable for that tax, either under the 1918 act or under the 1926 act. The court below was in error in granting recovery on the third count.

There is no need to send the case back for a new trial. It was tried by the court without a jury, and the facts were fully brought out. Under such conditions we may direct entry of a proper judgment. Fort Scott v. Hickman, 112 U.S. 150, 5 S. Ct. 56, 28 L.Ed. 636. The judgment will be modified by reducing the recovery against both defendants on the bonds to $75,000, with interest and costs, and by omitting the further recovery against the defendant Bornn on the third count.

Modified.